Affirmed and Memorandum Opinion filed April 15, 2010.

 

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00823-CR

___________________

 

DURON WAYNE BOOTHE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the County Criminal Court at Law No. 8

Harris County, Texas



Trial Court Cause No. 1500181

 



 

 

MEMORANDUM OPINION

Appellant, Duron Wayne Boothe, pleaded guilty to the misdemeanor offense
of driving while intoxicated (“DWI”).  In a single issue, appellant argues the
trial court erred in denying his motion to suppress.  Because the dispositive issues are
settled in Texas law, we issue this memorandum opinion and affirm the trial court’s judgment.  Tex. R. App.
P. 47.4.




 

I.   Background[1]

On
the morning of January 1, 2008, Officer Belwin Bolden of the Houston Police
Department was driving a police van when the driver of a vehicle carrying
passengers behind him (the “complaining individuals”) began flashing headlights
and sounding the horn.  The complaining individuals pulled beside Officer
Bolden and motioned for him to stop.  

The
complaining individuals informed Officer Bolden that the driver of another
vehicle which had struck their vehicle was chasing them.  Officer Bolden
described the demeanor of the complaining individuals as “pretty startled and
shaken.”  While he was speaking with the complaining individuals, appellant
arrived, driving his vehicle on the wrong side of the road.  The complaining
individuals recognized appellant’s vehicle as the one involved in the chase.  

According
to Officer Bolden, appellant parked in the middle of the street, exited his
vehicle, and hastily walked toward Officer Bolden.  Because of the manner of appellant’s
approach and the uncertainties of the situation, Officer Bolden pointed his gun
at appellant, told him to turn around, and placed him in handcuffs.  Officer
Bolden testified that appellant was agitated, had glossy eyes, and slurred his
speech.  Officer Bolden told appellant he was being detained for investigative
purposes.  When Officer Bolden asked appellant to explain the situation, he stated
several times, “[You] wouldn’t understand.”  Officer Bolden smelled “a strong
odor of alcohol emitting from” appellant and asked if he had been drinking. 
Appellant responded that he had consumed seven mixed drinks and was “just coming”
from a club.  Officer Bolden summoned a DWI Task Force unit and instructed
appellant to sit on the curb.  According to Officer Bolden, appellant was not
under arrest at this point.

Between
five and ten minutes later, Officers Michael Schwartzengraber and Danny Flores
arrived.[2]  Officers
Schwartzengraber and Flores were in the process of investigating a “shots
fired” call when they were informed that the person who made the “shots fired”
call might be at Officer Bolden’s location.  Officer Schwartzengraber saw
appellant sitting on the sidewalk with his hands handcuffed behind his back. 
Appellant was “very, very angry” and was yelling and swearing at the officers
who were speaking with him.  Appellant stated, “Why have you guys got me
handcuffed?  You know, [t]hey’re the ones . . . shooting at me,” apparently
referring to the complaining individuals.  Officer Schwartzengraber believed
appellant needed to be detained because he was uncooperative and belligerent; he
explained that belligerent people are detained for their own safety and the
safety of the officers.

Officer
Schwartzengraber stated that appellant required assistance to stand up and walk
to the patrol car.  Officer Schwartzengraber testified that he placed appellant
in the backseat of the patrol car and interviewed him; the patrol car door was
left open during the interview.  Officer Schwartzengraber did not give appellant
Miranda[3]warnings prior
to the interview.  Officer Schwartzengraber asked appellant for his version of
the events.  Appellant responded that the complaining individuals had “cut him
off,” he exchanged words and gestures with them at an intersection, and he
began following them after hearing gunshots.  While Officer Schwartzengraber
was still standing next to the patrol car, appellant began repeatedly stating
that Arab-Americans did not “belong in this country” and that he was trying to
“get rid of them out of our country.”  According to Officer Schwartzengraber,
the complaining individuals were of Arab ethnicity.  While he was questioning
appellant in the patrol car, Officer Schwartzengraber noticed the odor of
alcohol.  He also observed that appellant slurred his speech and had glossy
eyes.  Officer Schwartzengraber concluded appellant was intoxicated, but
explained that field sobriety tests were not performed because of appellant’s
uncooperative attitude.  Appellant was then taken to the police station “Intox room.”

After
appellant was charged with DWI, he filed a pre-trial motion to suppress the statements
he made to the officers.  Following a hearing, the trial court denied appellant’s
motion and orally pronounced its findings of fact and conclusions of law.[4] 
Trial began, but after several of the State’s witnesses testified, appellant
changed his plea from “not guilty” to “guilty” pursuant to a plea agreement.  In
consideration for appellant’s guilty plea, the prosecutor agreed to drop charges
against him if the appellate court reversed the trial court’s ruling on the
motion to suppress.  The trial court accepted appellant’s plea, and he was sentenced
to 180-days confinement in the Harris County Jail, suspended for one year.

II.   Analysis

In
his sole issue, appellant contends the trial court erred in denying his motion
to suppress the statements made to officers because they were uttered during
custodial interrogation and before he was given warnings required under the
United States Constitution and article 38.22 of the Texas Code of Criminal
Procedure.[5] 

A.        Standard of Review and Applicable Law

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated
standard of review.  St. George v. State, 237 S.W.3d 720, 725 (Tex.
Crim. App. 2007).  We view the evidence adduced at a suppression hearing in the
light most favorable to the trial court’s ruling.  Champion v. State,
919 S.W.2d 816, 818 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d).  The
trial court is the sole finder of fact and is free to believe or disbelieve any
or all of the evidence presented.  Id.  We give almost total deference
to the trial court’s determination of historical facts that depend on
credibility and demeanor, but review de novo the trial court’s
application of the law to the facts if resolution of those ultimate questions
does not turn on the evaluation of credibility and demeanor.  See Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  

An accused must generally be in custody before he is entitled
to Miranda warnings.  See Miranda, 384 U.S. at 444, 86 S. Ct. at
1612.  “‘[A] person is in “custody” only if, under the circumstances, a
reasonable person would believe that his freedom of movement was restrained to
the degree associated with a formal arrest.’”  Herrera
v. State, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007)
(quoting Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). 
This inquiry includes an examination of all the objective
circumstances surrounding the questioning. Id. The “reasonable person”
standard presupposes an innocent person, and the subjective intent of a police
officer is irrelevant unless communicated or manifested to the suspect.  Dowthitt,
931 S.W.2d at 254.  The Court of Criminal Appeals has stated four general
situations that may constitute custody: 

(1) when the suspect is physically deprived of his
freedom of action in any significant way, (2) when a law enforcement officer
tells the suspect that he cannot leave, (3) when law enforcement officers
create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted, and (4) when there is
probable cause to arrest and law enforcement officers do not tell the suspect
that he is free to leave.

Id. at 255. 
In the first three situations, the restriction on freedom must be to the degree
associated with an arrest, rather than that involved in an investigative
detention.  Id.  As to the fourth situation, the officer’s knowledge of
probable cause must be manifested to the suspect.  Id.  “Such
manifestation could occur if information substantiating probable cause is
related by the officers to the suspect or by the suspect to the officers.”  Id.
 “[S]ituation four does not automatically establish custody; rather, custody is
established if the manifestation of probable cause, combined with other
circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.”  Id.

B.        Analysis

            1.         Appellant’s
Statement to Officer Bolden

Appellant first contends his statement that he had consumed “seven mixed
drinks” and “just left the club” occurred during a custodial interrogation
before he was given the constitutionally and statutorily-required warnings. 
According to appellant, he was in custody because Officer Bolden (1) witnessed
appellant commit traffic violations, (2) observed he was agitated, had slurred
speech and glossy eyes, and smelled of alcohol, and (3) placed him in handcuffs.[6] 
Appellant argues any reasonable person in the same situation would believe his
“freedom of movement was restrained to the degree associated with formal arrest.”

Indeed, the use of handcuffs limited appellant’s freedom of movement.
 However, under Dowthitt, the restriction of freedom must be to
the degree associated with an arrest, rather than that involved in an
investigative detention.  Id.  Officer Bolden was flagged down by
frantic individuals who exclaimed that someone who struck their vehicle with
his vehicle was chasing them.  Appellant then arrived, driving on the wrong side of the road,
parked in the middle of the street, and hastily walked toward Officer Bolden. 
Officer Bolden pointed his gun at appellant and placed him in handcuffs. 
Importantly, Officer
Bolden told appellant “he was just being detained until I sort things out and
investigate what was going on that night.”  Officer Bolden said nothing about
the traffic violations.  

After the detention, Officer Bolden observed that appellant had slurred
speech and glossy eyes.  He asked appellant what had occurred, but appellant
stated several times, “[You] wouldn’t understand.”  Officer Bolden smelled the
odor of alcohol emitting from appellant which, coupled with his behavior,
caused him to suspect appellant was intoxicated.  He asked appellant if he had
been drinking, and appellant replied that he had consumed seven mixed drinks
and “just left” a club.

Considering all the circumstances preceding appellant’s statement
regarding the number of drinks he had consumed, a reasonable person would not
feel under restraint to the degree associated with a formal arrest, even though
he was in handcuffs, because Officer Bolden explicitly informed appellant he
was being temporarily detained for investigative purposes.  See Turner v. State, 252 S.W.3d 571, 580 (Tex.
App.—Houston [1st Dist.] 2008, pet. ref’d), cert. denied, 129 S. Ct.
1325 (2009); Bartlett v. State, 249 S.W.3d 658, 670 (Tex.
App.—Austin 2008, pet. ref’d) (“An officer’s subjective views may be relevant
to the custody determination to the extent they are communicated and would
affect a reasonable person’s understanding of his freedom of action.”).  Furthermore,
Officer Bolden’s question regarding whether appellant had been drinking was a
reasonable investigative inquiry considering appellant’s behavior. 
Accordingly, the trial court did not err in denying appellant’s motion to
suppress this statement.  

 2.       Appellant’s Statement to Officer Schwartzengraber

We next review whether appellant’s derogatory statements
regarding Arab-Americans occurred during custodial interrogation.  In it oral
findings of fact and conclusions of law, the trial court expressed that these
statements were not made in response to any interrogation, but were
volunteered: “While the second officer asked defendant what happened, the
defendant was in a - - continued to discuss and volunteered information about
[the complaining individuals], their possible nationality and background, his
anger about what happened on the street and so forth.”  On appeal, neither
party addresses whether these statements were volunteered.  However, we sustain
the trial court’s admission of evidence if the ruling is reasonably supported
by the record and correct on any theory of law applicable to the case.  Laney
v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

Under both the Fifth Amendment and article 38.22, voluntary
statements not made in response to police interrogation are admissible.  Ruth
v. State, 167 S.W.3d 560, 570 (Tex. App.—Houston [14th Dist.] 2005,
pet. ref’d).

Here, Officer Schwartzengraber asked appellant to give his
version of what occurred that morning.  Appellant responded that the
complaining individuals “cut him off,” he exchanged words and gestures with
them at an intersection, and then followed them after hearing gunshots. 
According to Officer Schwartzengraber, while he was “still standing” next to
the patrol car, appellant “just started into talking” and he repeatedly stated that Arab-Americans did not “belong in
this country” and that he was trying to “get rid of them out of our country.”  Officer Schwartzengraber
testified that, prior to these utterances, he did not ask appellant why he was
engaged in an altercation, but only asked what happened between appellant and
the complaining individuals.  

Viewing the evidence in the light most favorable to the trial
court’s ruling, this testimony supports the court’s ruling that appellant’s
statements were volunteered, i.e., the statements were not given in
response to Officer Schwartzengraber’s question concerning what had occurred.  We
acknowledge that appellant made the derogatory statements within a relatively
brief, but unspecified, amount of time after he answered Officer
Schwartzengraber’s question, and while Officer Schwartzengraber was still
nearby.  We also acknowledge that explaining his rationale for chasing the
complaining individuals is arguably responsive to Officer Schwartznegraber’s question. 
Nevertheless, because appellant had completed his response to the question, had
been behaving belligerently, and demonstrated a propensity for yelling, it is not
unreasonable to conclude that he volunteered the derogatory statements.  See
Manzi v. State, 88 S.W.3d 240, 243 (Tex. Crim. App. 2002) (“Where there
are two permissible views of the evidence, the factfinder’s choice between them
cannot be clearly erroneous.”).  Accordingly, the trial court did not err by
denying appellant’s motion to suppress the derogatory statements.[7] 


We overrule appellant’s sole appellate issue and affirm the trial
court’s judgment.

    

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel
consists of Chief Justice Hedges and Justices Seymore and Sullivan.

Do Not Publish —
Tex. R. App. P. 47.2(b).

 









[1]
Ordinarily, review of a motion to suppress is confined to the facts and
evidence presented at the suppression hearing.  See Rachal v. State, 917
S.W.2d 799, 809 (Tex. Crim. App. 1996).  Here, the trial court allowed appellant
a running objection regarding admission of the evidence he sought to suppress. 
Therefore, we will consider testimony given at both the suppression hearing and
trial.  See Weaver v. State, 265 S.W.3d 523, 533, 535 n.
4 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d) (considering trial
testimony during review of pre-trial motion to suppress because appellant
reurged suppression following the trial testimony).  Nevertheless, our
disposition would remain the same even if we refused to consider the trial
testimony, and we consider the findings of fact and conclusions of law dictated
by the trial court at the end of the pre-trial suppression hearing.





[2] 
Officer Schwartzengraber was not a member of the DWI Task Force.





[3]
Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).





[4]
In reviewing a motion to suppress, oral findings of fact and conclusions of law
may be considered with appropriate deference to the trial court.  See State
v. Cullen, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006).  It is clear from
the record that the trial court intended its oral statements to serve as its
findings and conclusions, but the court also asked the State to file
supplemental findings of fact and conclusions of law.  However, no supplemental
findings and conclusions appear in the record, and nothing indicates that appellant
requested the trial court to supplement its findings.  Hence, we consider and
give deference to the trial court’s oral findings of fact and conclusions of
law.





[5]
Although appellant asserts error under both the United States and Texas constitutions,
he does not indicate how his rights under the Texas Constitution are different
from those under the federal constitution.  As a result, we decline to address
appellant’s state constitutional argument.  See Arnold v. State, 873
S.W.2d 27, 33 & n. 4 (Tex. Crim. App. 1993).  





[6]
In his brief, appellant also asserts that Officer Bolden testified that
he told appellant “he was not free to leave.”  However, while Officer Bolden
admitted that appellant was not free to leave, the record does not reflect that
he manifested this intent; instead, Officer Bolden told appellant he was being
detained for investigative purposes.  See Dowthitt, 931 S.W.2d at
254 (explaining that an officer’s intentions are relevant only to the extent they
are manifested to the suspect).  





[7]
Because we hold that these statements were volunteered, we need not reach the
issue of whether appellant was under arrest at that time.  See Kelly v.
State, No. 14-04-00619-CR, 2005 WL 3071946, at *2 (Tex. App.—Houston [14th
Dist.] Nov. 17, 2005, no pet.) (mem. op., not designated for publication)
(“When an accused in custody spontaneously volunteers information not in
response to earlier interrogation by authorities, the statement is admissible .
. . .”).