Gary Wayne **WEAVER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–07–00178–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 26, 2008.

Discretionary Review Refused
Nov. 5, 2008.

---

1. We do not reach Frank's issue of jury charge error.

Ernest Davila, Houston, TX, for Appellant.

Carol M. Cameron, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR., Justice.

Following trial, a jury convicted appellant, Gary Wayne Weaver, of aggravated robbery,[1] and the trial court assessed punishment at life imprisonment. On appeal,

---

1. TEX. PENAL CODE ANN. § 29.03 (Vernon 2003).

appellant presents six issues: (1) whether the evidence supporting the verdict is legally and factually sufficient; (2) whether the warrantless search of the apartment at which he was a guest was illegal; (3) whether his confession was illegally obtained due to interrogating officers' misrepresentations; (4) whether he should have been brought before a magistrate prior to being interrogated by police; (5) whether the trial court's refusal to allow the jury to assess punishment denied him procedural due process; and (6) whether his counsel was ineffective. We affirm.

## Background

On May 14, 2006, the Houston Police Department ("HPD") began investigating a body found under an overpass bridge. A driver's license found on the decedent identified him as Ramesh Cherukumalli. At trial, the medical examiner testified that Cherukumalli died from multiple gunshot wounds.

During their investigation, officers questioned and took the written statement of Christina Dewitt. Dewitt lived at an apartment complex on Red Bluff in Pasadena, Texas. Dewitt consented to a search of her apartment and purse, in which officers discovered Cherukumalli's identification card and vehicle title.

After the officers questioned Dewitt, appellant became a person of interest to the investigation. HPD informed Pasadena Police Department Officer Joseph Phillips that a warrant had been issued for appellant's arrest. Officer Phillips knew appellant from previous encounters and knew that he often visited Dewitt's apartment. Officer Phillips arrived at Dewitt's apartment around 5:20 p.m., looked through the window, and saw appellant lying on a pallet, apparently asleep. After back-up arrived, Officer Phillips knocked on the front door. Appellant answered wearing only

boxer shorts and was arrested. Officer Phillips entered the apartment and retrieved appellant's clothing and wallet. Cherukumalli's Bank of America debit card was found in appellant's wallet. Officer Phillips notified HPD, and appellant was turned over to Investigator Steven R. Straughter at HPD headquarters.

Investigator Straughter and Sergeant Robert Torres interrogated appellant for about an hour and 45 minutes. After first strenuously denying involvement, appellant finally confessed to Cherukumalli's murder. He told police that he and Dewitt kidnapped Cherukumalli at Dewitt's apartment by tying him up and placing him in the trunk of a car. After renting rooms at a hotel, Dewitt stayed with Cherukumalli at the hotel while appellant went to use Cherukumalli's debit cards. Appellant stated that the debit cards did not work because Cherukumalli gave Dewitt the wrong pin numbers. Appellant also confessed that he took cash from Cherukumalli's wallet, some of which Dewitt later used to buy drugs. When appellant returned, they placed Cherukumalli back in the car and drove to an area underneath a bridge. Appellant stated that he wanted to let Cherukumalli go, but that Dewitt wanted to kill him because he knew her.

During the interrogation, officers asked appellant what type of gun he "used." Appellant responded that he used a "chrome gun" and, without specifically saying that he shot Cherukumalli, stated, "I've already said I did it, huh, so I might as well say M515 .22 Magnum." He told the officers that he had since traded the gun for crack. Appellant also admitted that he used Cherukumalli's Bank of America debit card about 15 times at various convenience stores, and that he burned Cherukumalli's car.

Appellant was charged with capital murder for intentionally causing Cherukumal-

li's death while in the course of committing or attempting to commit the robbery and/or kidnapping of Cherukumalli, and the State sought the death penalty. At trial, appellant entered a plea of not guilty and he testified that his confession to police was false and that he did not participate in Cherukumalli's murder. He told the jury that it was Dewitt and two men known as "D–Ray" and "Northside" who were involved in the shooting. His counsel requested and were granted an instruction on the lesser included offense of aggravated robbery. The jury found appellant guilty of aggravated robbery and the trial court assessed punishment at life imprisonment. Appellant now brings the following issues on appeal.

### Legal and Factual Sufficiency

■ In his first issue, appellant argues that the evidence was legally and factually insufficient to support the aggravated robbery verdict. He argues that the evidence, at most, merely shows that he was present when Cherukumalli was shot.

### Standard of Review

■ In our legal-sufficiency review, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). In our factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). We will set aside the verdict only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the proof of guilt is against the great weight and preponderance of the evidence. *Johnson*, 23 S.W.3d at 11. Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "mani-

festly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim.App.2006). Under the second prong of *Johnson*, we also cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In our factual-sufficiency review, we must also discuss the evidence that, according to appellant, most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

■ The fact-finder alone determines the weight to be given contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *Cain*, 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407 n. 5; *see also Lancon v. State*, 253 S.W.3d 699, 705–07 (Tex.Crim.App.2008).

### Analysis

To convict appellant of aggravated robbery, the jury had to find that he committed robbery *and* either caused serious bodily injury to another *or* used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03.

Additionally, appellant could have been found guilty of aggravated robbery as a party to the offense if the jury found that he, with the *intent to promote* or *assist* the commission of the offense, solicited, encouraged, directed, aided or attempted to aid the others to commit the offense. *See*

TEX. PENAL CODE ANN. §§ 7.01; 7.02(a)(2) (Vernon 2003). Accordingly, we interpret appellant's first issue to be that the evidence is legally and factually insufficient to support his conviction for aggravated robbery, either as a principal or as a party to the offense, because appellant contends the evidence merely shows he was merely present during the commission of the crime. Appellant mischaracterizes the evidence against him.

For example, appellant contends that the record provides no evidence he knew a weapon would be used to rob Cherukumalli. In support of this argument, appellant directs us to his testimony at trial, where he admitted that he drove Dewitt, D–Ray, Northside, and Cherukumalli to the location of the shooting, but in which he also testified that he was smoking crack throughout the incident. Appellant also claimed he was ignorant of any plan to shoot Cherukumalli and that he actually told Cherukumalli to run before he was shot.[2]

However, in addition to appellant's trial testimony, the jury also heard evidence regarding appellant's confession that he and Dewitt put Cherukumalli in the car and appellant drove to the location underneath the bridge. While appellant did not expressly state that he shot Cherukumalli, and he actually stated that he was going to let Cherukumalli go, he did admit that he "did it" and that he used a "chrome gun" at some point during the crime.

 Appellant's confession was also corroborated by independent evidence at trial. A criminal conviction cannot be based upon a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the *corpus delicti*. *Trejos v. State*, 243 S.W.3d 30, 56 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd). Some evidence, independent of appellant's statements, must show that the crime actually occurred, though the independent evidence does not have to identify the defendant as the culprit. *Salazar v. State*, 86 S.W.3d 640, 644–45 (Tex.Crim.App.2002). The corroborating evidence need not prove the underlying offense conclusively; all that is required is that some evidence makes the commission of the offense more probable than it would be without the evidence. *Cardenas v. State*, 30 S.W.3d 384, 390 (Tex.Crim.App.2000). At trial, evidence showed that Cherukumalli's body was found underneath a bridge with gunshot wounds, and Cherukumalli's debit card was found in appellant's wallet. Accordingly, appellant's confession was corroborated by independent evidence establishing the corpus delicti. *Cf. Rivera v. State*, 89 S.W.3d 55, 57 (Tex.Crim.App.2002).

Appellant's corroborated confession is some evidence that he participated in Cherukumalli's shooting as a principal.[3] We

---

2. Appellant also points to his testimony concerning events following the shooting as proof that he was not a party to the offense: he testified that he hid from Dewitt and others in a gas station bathroom, and that he did not disclose D–Ray's and Northside's involvement in the shooting during his interrogation because he had been threatened and feared reprisal.

3. Appellant appears to assert two reasons why he could not have been found guilty of aggravated robbery as a principal. First, he contends that, even though he had possession of Cherukumalli's debit card, there was no evidence that he personally took the debit card from Cherukumalli. Even if this were true, it would not necessarily mean that appellant could not have been found guilty as a principal.

As charged, the jury was instructed to convict appellant of aggravated robbery if it found that he committed the theft of property owned by Cherukumalli, with the intent to obtain or maintain control of the property. Theft, as defined in the charge, is the unlawful

hold that the evidence is legally sufficient to support appellant's conviction beyond a reasonable doubt and that he was more than merely present when Cherukumalli was shot. Furthermore, the evidence is factually sufficient, because the jury was free to believe all, some, or none of the testimony presented, and could have chosen to believe appellant's corroborated extrajudicial confession and ignored his exculpatory trial testimony. *See Cain*, at 407 n. 5.

We overrule appellant's first issue.

### Suppression of Evidence

■■■■ Appellant's second, third, and fourth issues deal with the admission of evidence at trial. Our standard for reviewing a trial court's ruling on a motion to suppress evidence is bifurcated; we give almost total deference to a trial court's determination of historical facts and review de novo the court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App.2002). In reviewing a ruling on a question of the application of law to facts, we review the evidence in the light most favorable to the trial court's ruling. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell*, 73 S.W.3d at 281. Accordingly, the trial court may

choose to believe or to disbelieve all or any part of the witnesses' testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

### Legality of Search

We interpret appellant's second argument to be that the trial court erred in refusing to grant his motion to suppress the evidence resulting from the illegal search of Dewitt's apartment. *See* U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, § 9.

■■■■ We first consider whether appellant has standing to challenge the legality of the police officers' search of Dewitt's apartment. The burden to prove standing to challenge the legality of the search rests with the defendant. *Granados v. State*, 85 S.W.3d 217, 223 (Tex.Crim.App.2002). To have such standing, a defendant must show that he had an actual, subjective expectation of privacy, exhibited by measures taken to protect the privacy of the property in question, which society is prepared to recognize as reasonable. *Id.* at 222–23. In considering whether appellant has demonstrated an objectively reasonable expectation of privacy, we look at the totality of the circumstances including, but not limited to: (1) whether he had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had

appropriation of property with intent to deprive the owner of property. Appropriation, is defined as acquiring or otherwise exercising control over property other than real property. Appropriation of property is unlawful if it is without the owner's effective consent. Accordingly, the jury could have found that appellant committed theft of Cherukumalli's property without finding that he personally took the property from Cherukumalli, as long as it found that he acquired or exercised control over the property without Cherukumalli's effective consent.

Second, appellant asserts that the jury's verdict means that it found him not guilty of capital murder, which he contends necessarily implies that it found he did not fire the weapon that caused Cherukumalli's death, and, therefore, that he did not possess a weapon to commit the aggravating element of the offense. However, the jury's verdict does not necessarily imply that it found that appellant did not shoot Cherukumalli or possess a gun, because the jury could have acquitted appellant of capital murder if it found that he did not *intentionally* cause Cherukumalli's death by shooting him.

complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Id.* at 223.

During the motion to suppress, the State argued that the search was legal and that appellant lacked standing to challenge the search. The trial court denied the motion to suppress evidence stemming from the search, but did not make explicit findings of facts or conclusions of law explaining its factual or legal basis in denying the motion. Under these circumstances, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports these implied fact findings. *State v. Kelly,* 204 S.W.3d 808, 819 (Tex.Crim.App.2006). We will uphold the ruling on any theory of law applicable to the case. *Ross,* 32 S.W.3d at 856. We review the trial court's legal ruling de novo unless the supported-by-the-record implied fact findings are also dispositive of the legal ruling. *Kelly,* 204 S.W.3d at 819. When the trial court's determination on a suppression issue turns on the credibility and demeanor of a witness, we give "almost total deference" to the trial court's ruling. *Ross,* 32 S.W.3d at 856.

In arguing that he had a reasonable expectation of privacy in Dewitt's apartment, appellant relies primarily on caselaw expressing that an overnight guest has an expectation of privacy in the house where he is staying. *See, e.g., Minnesota v. Carter,* 525 U.S. 83, 88–90, 119 S.Ct. 469, 473–74, 142 L.Ed.2d 373 (1998). To support his status as an overnight guest at Dewitt's apartment, appellant points to testimony given at both the suppression hearing and during trial.

Appellant first directs us to Officer Phillips's testimony that he knew to look for appellant at this specific apartment, and that he found appellant asleep in the apartment when he arrived to arrest him. Because this testimony was given during the suppression hearing, we consider it in our review. *See Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.1996).

Appellant also relies on his testimony at trial that he had a key to the apartment, which was given after he had re-urged his motion to suppress at the end of the State's case-in-chief. While implied findings are generally limited to evidence produced at the suppression hearing because the trial court's ruling was based on it rather than evidence introduced later, this general rule is inapplicable when the parties consensually re-litigate the suppression issue during the trial on the merits. *Gutierrez v. State,* 221 S.W.3d 680, 687 (Tex.Crim.App.2007); *Rachal,* 917 S.W.2d at 809. When the parties have made an election to reopen the evidence, consideration of the relevant trial testimony is appropriate in our review. *Gutierrez,* 221 S.W.3d at 687; *Rachal,* 917 S.W.2d at 809. Here, the parties "consensually re-litigated" the issue of appellant's standing to challenge the search of Dewitt's apartment when appellant testified on issues related to his standing without objection from the State, and the State cross-examined appellant concerning the same issues. *See Meridyth v. State,* 163 S.W.3d 305, 308 (Tex.App.–El Paso 2005, no pet.). Therefore, we also consider this testimony in our review.

In light of the totality of the circumstances, we conclude that appellant did not prove he had a reasonable expectation of privacy in the apartment on the day of his arrest. Appellant was putting the

apartment to some private use by napping there. However, there is no evidence that Dewitt had given appellant permission to spend the night at the apartment on the day of his arrest. *See Granados*, 85 S.W.3d at 225 (expressing the general rule to be "that the defendant must establish that he had permission to be on the premises on the occasion of the search at issue"). The fact that he was asleep in the apartment at around five o'clock in the afternoon does not establish his status as an overnight guest. Moreover, that Officer Phillips knew to look for appellant at Dewitt's apartment merely indicates appellant frequented the apartment, but is not conclusive evidence of his privacy interest in the apartment. We recognize that, at trial, appellant testified that he had been staying at the apartment for several weeks, had a key to the apartment, and was told to "hang out" at the apartment by Dewitt on the day of the arrest. However, the trial court, as judge of demeanor and credibility, could have chosen to not believe appellant's unsubstantiated testimony. *See Ross*, 32 S.W.3d at 855. Without appellant's self-serving testimony, the evidence does not show that he had any other property or possessory interest, was legitimately in the place invaded, had complete dominion with the right to exclude others, took normal precautions customarily taken by those seeking privacy, or his claim of privacy is consistent with historical notions of privacy. *Granados*, 85 S.W.3d at 223. Accordingly, appellant lacks standing to challenge the legality of the officers' search of Dewitt's apartment. We hold that the trial court did not err in denying appellant's motion to suppress the evidence stemming from the search of Dewitt's apartment.

We overrule appellant's second issue.

**Police Interrogation**

We interpret appellant's third issue to be that the trial court erred by not sup- pressing his confession, because the police interrogators used illegal tactics in obtaining the confession. Appellant contends that, during the approximately hour and 45 minute interview, interrogating officers deceived him and refused to inform him of the charges he faced, while he repeatedly denied involvement in Cherukumalli's death or in the burning of Cherukumalli's car.

■■■■ A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion. TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005). Whether a statement is voluntary is a mixed question of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex.Crim.App.2000). Misrepresentations made by the police to a suspect during an interrogation are relevant factors in assessing whether the suspect's confession was voluntary, but are insufficient to render an otherwise voluntary confession inadmissible. *Green v. State*, 934 S.W.2d 92, 99 (Tex.Crim.App.1996). The misrepresentations must be viewed in the context of the totality of their circumstances. *Id.* The focus is on whether the behavior of the State's law enforcement officials was such as to overbear the will of the accused and bring about a confession not freely determined. *Id.* at 99–100. Of the numerous types of police deception, a misrepresentation relating to an accused's connection to the crime is the least likely to render a confession involuntary. *Id.* at 100.

Appellant contends that the illegal tactics used by the officers during his interrogation induced him to make a false confession after he repeatedly denied involvement in the crime. He asserts that the officers never gave him a clear answer on what charges were asserted

against him, even though he asked several times. He also complains that the officers misrepresented that (1) witnesses saw him commit the crime, (2) his fingerprints were found, and (3) a videotape showed his involvement in the crime. Officer Straughter admitted at the suppression hearing that the police did not know if fingerprints had been found and he testified at trial that lying is a common and accepted police tactic during interrogation and stated that police did not know if there were cameras at the hotel.[4] Finally, appellant argues that one of the officers made false promises. After inquiring as to appellant's age, the officer told appellant he had his whole life ahead of him, even though the officer knew appellant was charged with capital murder. Additionally, when discussing appellant's drug use, the officer stated, "You know what if this just happened when you, you know you might had been doing something you didn't realize what you were doing, that's fine! There's nothing wrong with that...." Appellant appears to contend that, by making this statement, the officer was falsely promising that appellant would not face legal consequences if he committed the crime while under the influence of an illegal substance.

■ In viewing the totality of appellant's interrogation, we determine that the trial court did not err in concluding that appellant's confession was voluntary.[5] Appellant's inquiries as to what charges were being brought against him did go unanswered, but, as the trial court found, the officers specifically told appellant that they were investigating a capital murder. Offi-

cers' misrepresentations that witnesses, fingerprints, and video linked appellant to the crime merely related to his connection to the crime and were not the type of deception that likely causes an involuntary confession. *See Green,* 934 S.W.2d at 100; *see also Rodriquez v. State,* 934 S.W.2d 881, 890 (Tex.App.–Waco 1996, no pet.). Similarly, any promises made that appellant "had his whole life ahead of him" or relating to appellant's drug use during the crime were not of such an influential nature that would cause appellant to speak untruthfully. *Martinez v. State,* 127 S.W.3d 792, 794 (Tex.Crim.App.2004).

We overrule appellant's third issue.

**Failure to Bring Accused Before Magistrate**

■ We interpret appellant's fourth issue to be that the trial court erred by not suppressing his confession because he was not brought before a neutral and detached magistrate prior to being interrogated by the police.

Article 15.17 of the Code of Criminal Procedure requires that the person arrested be brought before a neutral and detached magistrate without unnecessary delay, but not later than 48 hours after being arrested. Tex.Code Crim. Proc. Ann. art 15.17(a) (Vernon Supp.2007). The magistrate's function is to

... inform in clear language the person arrested ... of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys repre-

---

4. Because appellant re-urged his motion to suppress his confession after the State elicited this testimony, it was considered by the trial court and we will consider it on appeal. *See Rachal,* 917 S.W.2d at 809.

5. Appellant also mentions that the jury apparently did not believe his confession, because it convicted him only of aggravated robbery. We need not consider this, however, because "the truth or falsity of a confession is irrelevant to a voluntariness determination." *Martinez,* 127 S.W.3d at 794.

senting the state, of his right to terminate the interview at any time, and of his right to have an examining trial.... The magistrate shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him.

*Id.*

The evidence shows that appellant was brought before a magistrate within 24 hours of being arrested. Following the suppression hearing, the trial court ruled that there was no unnecessary delay in bringing appellant before the magistrate and denied his motion on this point.

█ It is the defendant's burden to demonstrate (1) that a delay was unnecessary and (2) the existence of a causal connection between the confession and the failure to take him before a magistrate without unnecessary delay. *Bonner v. State,* 804 S.W.2d 580, 582 (Tex.App.– Houston [1st Dist.] 1991, pet. ref'd). On appeal, appellant does not assert any reason for why the officers' delay in bringing him before a magistrate was unnecessary. However, even assuming that the delay was unnecessary, we hold that he has not shown a causal connection between the delay and his confession.

Appellant contends that it is apparent from the interrogation that he did not understand the nature of the charges brought against him. He argues that a

magistrate would have informed him of the actual charges he faced and would have clearly informed him of his rights. According to appellant, this would have prevented his confession, because he would have been appointed an attorney who would not have allowed him to be subjected to the lengthy and intense interrogation.[6]

█ We conclude that appellant has failed to establish a causal connection between his confession and the unnecessary delay in his being brought before a magistrate. He has provided no support for his conclusory statement that his confusion as to what charges he faced led to his confession. Additionally, a confession that is obtained prior to the accused being taken in front of a magistrate is valid as long as his article 38.22[7] warnings had been read to him before the statement was taken. *See Curry v. State,* 910 S.W.2d 490, 496 (Tex.Crim.App.1995) (citing *Boyd v. State,* 811 S.W.2d 105, 125 (Tex.Crim.App.1991); *Shadrick v. State,* 491 S.W.2d 681, 683–84 (Tex.Crim.App.1973)). Here, the interrogation video shows that, before any statement was made, the officers read appellant his rights and appellant indicated that he understood each one. Therefore, we hold that the trial court did not err in denying appellant's motion to suppress his confession due to the officers' delay in bringing him before a magistrate.

We overrule appellant's fourth issue.

---

**6.** Appellant also directs us to his expert's trial testimony, which he argues indicates that his mental and emotional health history and his use of illegal drugs may have resulted in his making a false confession. We recognize that, at the suppression hearing, appellant argued that a causal connection existed between his confession and the alleged untimely manner in which he was brought before a magistrate, because a magistrate could have made a determination regarding his psychological and mental condition before the interview. However, the expert's testimony at tri-

al related to appellant's mental condition and chemical dependency is not, by itself, a re-litigation of the suppression issue. *See Rachal,* 917 S.W.2d at 809. Therefore, we do not consider appellant's expert's testimony in our review.

**7.** TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (Vernon 2005); *see also Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## Procedural Due Process

In his fifth issue, appellant contends that the trial court erred in not permitting the jury assess his punishment. Appellant's counsel did not file a motion requesting the jury assess punishment until after the jury had retired to deliberate on guilt or innocence. The trial court denied this request as untimely filed. Appellant argues that this denial violated his right to procedural due process under the United States and Texas Constitutions because he has a right to elect that the jury assess punishment for the non-capital offense of aggravated robbery. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (Vernon 2006).[8] Specifically, appellant appears to assert that, because he was charged with capital murder and the State sought the death penalty, he was precluded from making a pre-trial election as to punishment, because the jury is required by statute to either sentence him to death or life imprisonment without parole. *See id.* art. 37.071, § 2 (Vernon 2006). We disagree.

 Procedural due process questions are traditionally examined in two steps: (1) whether there exists a liberty or property interest which has been interfered with by the State, and (2) whether sufficient procedural safeguards are employed to assure the deprivation of that interest is not arbitrary. *Ex parte Robinson*, 116 S.W.3d 794, 796 (Tex.Crim.App. 2003). Procedural due process ensures that government decisions will be made with sufficient procedural safeguards. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).

 Under article 37.07, section 2(b), punishment assessment is the role of the trial court, unless, among other exceptions, the defendant elected for jury punishment in writing before the commencement of voir dire. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 2(b). After that time, the defendant may change his election as to who assesses punishment only with the State's consent. *Id.* Thus, the legislature has afforded defendants a right to jury punishment *if* they file a pre-trial election asking for it. Appellant did not file any such election.

 Appellant cites no caselaw to support that the trial court interfered with his right to jury punishment. In light of his failure to file a pre-trial election, we hold that appellant was not denied sufficient procedural safeguards.

We overrule appellant's fifth issue.

## Ineffective Assistance of Counsel

In his sixth and final issue, appellant asserts that he received ineffective assistance of counsel at trial because his counsel (1) argued to the jury that he was guilty of aggravated robbery and (2) failed to file a pre-trial election for the jury to assess punishment.

### Standard of Review

 To be entitled to a new trial based on a claim for ineffective assistance of counsel, a defendant must demonstrate on appeal that (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the Sixth Amendment, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). Appel-

---

8. In arguing to the court that he did not waive his right to elect jury punishment, appellant stated that his due process rights under the Penal Code require that the court allow him to elect jury punishment. We conclude that he brought the due process issue to the court's attention and, thus, preserved the issue for appeal.

lant has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *See Jackson v. State,* 973 S.W.2d 954, 956 (Tex.Crim.App. 1998).

Because there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance, appellant must overcome the presumption that counsel's action or inaction might be considered "sound trial strategy" under the circumstances. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Any allegation of ineffectiveness must be firmly founded in the record, which must demonstrate affirmatively the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Generally, the record on appeal is undeveloped, and a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander v. State,* 101 S.W.3d 107, 110–11 (Tex.Crim. App.2003). When the record is silent regarding counsel's reasoning or strategy, we may not speculate to find trial counsel ineffective. *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.–Houston [1st Dist.] 1996, no pet.). However, it is not speculation to hold counsel ineffective if a silent record clearly indicates that no reasonable attorney could have made such trial decisions. *See Weeks v. State,* 894 S.W.2d 390, 392 (Tex.App.–Dallas 1994, no pet.) (citing *Vasquez v. State,* 830 S.W.2d 948, 950–51 (Tex.Crim.App.1992) (per curiam)). Therefore, in rare cases, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy. *See Robinson v. State,* 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000).

**Analysis**

In the first part of his ineffective assistance claim, appellant contends that his trial counsel not only requested and received an instruction on aggravated robbery, but also asked the jury to find him guilty of aggravated robbery. Appellant asserts that this amounted to deficient representation because there could be no reasonable strategy for asking the jury to convict appellant of an offense for which there was insufficient evidence to support. However, attempting to persuade the jury to convict the defendant of a lesser included offense can be considered a reasonable trial strategy, particularly where the evidence supports the charged offense. *See Hathorn v. State,* 848 S.W.2d 101, 118 (Tex.Crim.App.1992). In light of appellant's extrajudicial confession, we refuse to hold that no reasonable attorney could have argued for the jury to convict on the lesser included offense.

Appellant also argues that counsel was ineffective for failing to file timely an election for the jury to assess punishment. He contends that the record reveals that no strategic decision was involved because counsel admitted that they failed to file a timely election. We disagree.

In this case, the record does not establish that the absence of a pre-trial election was not based on a strategic decision. Instead, the record only shows that, after the jury sent a note during deliberation asking about aggravated robbery, counsel determined that no election had been filed and spoke with appellant, who indicated that he wanted jury punishment. Because the record is silent as to why no pre-trial election was filed, and we cannot say that no reasonable attorney would have failed to file such an election, we may not speculate to find trial counsel ineffective. *Gamble,* 916 S.W.2d at 93; *Weeks,* 894 S.W.2d at 392.

We conclude that appellant has failed to overcome the presumption of reasonable

assistance on direct appeal, because the record is silent as to counsel's strategy and appellant has failed to show that no reasonable attorney could have made similar decisions. Accordingly, we decline to address the merits of appellant's ineffective assistance allegations. *See Thompson,* 9 S.W.3d at 814.

We overrule appellant's sixth issue.

### Conclusion

We affirm the trial court's judgment.