Opinion issued July 29, 2010




             



 
 





In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00693-CR
____________

LATONYA MONIQUE RIGGINS, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1084863


 

MEMORANDUM OPINION
          Appellant, Latonya Monique Riggins, was charged by indictment with first
degree murder of the complainant, Roderick Evans. See Tex. Penal Code Ann.
§ 19.02 (Vernon 2003). Appellant pleaded guilty without an agreed recommendation,
and the trial court held a pre-sentence investigation (“PSI”) hearing. Upon her guilty
plea, the trial court found appellant guilty of murder, with an affirmative finding of
a deadly weapon, and assessed punishment at 30 years in prison. 
          Appellant timely filed her notice of appeal but never filed a motion for new
trial. On appeal, appellant argues that she received ineffective assistance of counsel
in both the guilt/innocence and sentencing phases of trial due to trial counsel’s failure
to present testimony from a mental health expert. Additionally, she argues that her
counsel was ineffective during the punishment phase for failing to object to the
prosecutor’s argument that the court should not consider deferred adjudication and
should instead sentence appellant to 40 years’ imprisonment. 
          We affirm.
Background
          On the morning of September 14, 2006, neighbors of appellant heard her
arguing with the complainant, Roderick Evans. Appellant and Evans had separate
apartments in the same complex. The argument ended abruptly, and appellant was
observed scrubbing her front porch between 7:30 and 7:45 a.m. At 9:11 a.m., officers
were dispatched to appellant’s apartment to respond to a report of a man, later
identified as Evans, bleeding and passed out. Paramedics determined that Evans had
been stabbed twice in the back. Evans was taken to the hospital and pronounced dead
at 9:59 a.m. 
          Appellant told the police officers that she was going to school and found her
friend, Evans, on the porch throwing up blood and bleeding everywhere. When asked
why blood was not on the porch, appellant told officers that she had cleaned it up.
The apartment manager informed the officers that appellant and Evans had a history
of domestic disputes, and she believed appellant had stabbed Evans on a previous
occasion. 
          After being read her statutory warnings, appellant gave a statement to
investigators. Appellant said that, as she was getting ready to go to school, she heard
some noise at the door. She said when she opened the door, she saw Evans throwing
up blood and bleeding all over the front porch. The investigators questioned
appellant’s story and told her that it did not make sense for her to clean the porch
while Evans was in need of help. At that point, appellant changed her story. She told
investigators that she was getting ready to go to school when Evans came over with
a six-pack of alcohol at approximately 7:30 a.m. and began drinking. Appellant
stated that she walked her children to the bus stop and returned around 7:40 a.m. 
When she returned, Evans was yelling obscenities at her and calling her names. 
Appellant was upset by Evans’s behavior and asked him to leave, but he refused. 
Appellant stated she picked up the three remaining beers and threw them out of the
apartment, which upset Evans. Appellant claimed that Evans picked up a chair as if
he were going to throw it at her, so she ran to her bedroom and grabbed a pocket
knife. Appellant told Evans she was going to call the police, and Evans set the chair
down and ran outside the apartment. Evans continued yelling obscenities, and after
appellant said she was calling the police, Evans grabbed the chair again. Appellant
stated that she raised the knife, and Evans stopped and turned away, with his back to
her. Appellant described Evans as “standing in the fetal position,” as he continued
to yell obscenities at her. Appellant was asked if Evans was coming at her when she
stabbed him, and she stated he was coming at her until she raised the knife and then
he stopped and turned away. Appellant said that she stabbed him twice and he fell
down and began to bleed on the front porch. Appellant said that she pulled Evans
into the apartment and called an ambulance. She cleaned the front porch with bleach
and water and put his bloody clothes in the sink. Appellant put a towel over Evans’
wounds and changed him into different clothes. Appellant first told investigators that
she threw the pocket knife into the bayou, but later, she said she used a kitchen knife
to stab Evans, which she left in the kitchen. Appellant stated the stabbing occurred
around 8:30 a.m., and it took her six to seven minutes to clean and change Evans’s
clothes.
          Investigators interviewed Evans’s stepbrother, Adrian Godfrey, who described
appellant as a very violent person and told investigators that appellant had stabbed
Evans twice previously. The first time, appellant stabbed Evans in the hand. Then,
four to five months before the murder, she stabbed him in the neck. Godfrey said that
Evans did not report the prior incidents.
Appellant was charged with Evans’s murder, and the case was set for
September 10, 2007. On September 10, appellant’s counsel requested a continuance
to allow time to prepare for trial because appellant previously had planned to enter
a guilty plea but had changed her mind. As a result, counsel said more time was
needed to subpoena necessary witnesses, including fact and medical/mental health
witnesses. The court granted the continuance and reset the trial for April 28, 2008.           On April 28, 2008, appellant pleaded guilty. At the time she entered her plea
of guilty, appellant stated she was freely and voluntarily entering the guilty plea and
she was doing so because she was truly guilty of the charged offense. Appellant was
given all the required admonishments by her attorney and the court. The court
advised appellant, “This is a first degree felony offense. It is punishable not less than
five years nor more than 99 years or life in the penitentiary. You may be fined any
amount not to exceed $10,000.” Appellant stated she understood the full range of
punishment for the offense and that the court could sentence her to any time within
the range. The trial court asked appellant if she had ever been “treated for any kind
of mental illness, mental disease or mental defect of any nature,” and appellant
responded, “No.” Appellant acknowledged that she understood what she was doing
and the consequences of her plea. The court made a finding that appellant was
competent to stand trial and that her plea was freely and voluntarily made.
Appellant requested a PSI hearing and filed a motion requesting community
supervision. At the PSI hearing, appellant testified that Evans had abused her on
many occasions. Appellant said that she met Evans in New Orleans, where the two
lived together for about one or two years. After Hurricane Katrina, she moved to
Houston with Evans. Appellant testified that both she and Evans had separate
apartments at the same complex in Houston, but they lived together in her apartment. 
She claimed that Evans became abusive towards her while they were living together
in Houston. She said she called the police about 15 or 16 times to report the abuse
but admitted on cross-examination that she never had any physical injuries. She
stated that a couple of months prior to the incident, she told Evans he could no longer
live with her in her apartment. Appellant’s daughter testified, however, that at the
time of the incident, Evans was still living at appellant’s apartment.
During the PSI hearing, evidence was presented showing that appellant had
stabbed Evans previously when the two lived in New Orleans. On the day of the
incident, she said Evans picked up a chair but did not actually throw it at her or hit
her in any way. Appellant testified that, to her knowledge, Evans did not have a
weapon with him. She was able to get outside to yell for help but then ran back into
the apartment. Appellant originally told police she stabbed Evans because she was
tired of him bugging her, but at the PSI hearing, she said that she stabbed him because
she was scared and tired of all the violence. Appellant said her “mind was gone,”
when she stabbed Evans, and “[she] just wasn’t thinking straight.”
Appellant testified that Evans was still alive after she stabbed him, and he
asked appellant for help. She stated that she tried to help Evans. When asked what
she did to help him, appellant responded that she “brought him in the house, took his
clothes off, changed it, put them in the sink.” As shown by the physical evidence,
appellant took off Evans’s clothes that had holes from the stab wounds and dressed
him in new clothes. Appellant testified at the PSI hearing that she cleaned the front
porch before calling for help. Appellant acknowledged on cross-examination that she
knew that, if she got help for Evans, he might live, but she made the choice to let him
die. She did not know how long she waited after stabbing Evans before calling the
police.
In her PSI interview, appellant stated that she began seeing a psychiatrist in
December 2006, three months after being arrested for the charged offense, and was
prescribed medication for bipolar disorder. Appellant told the PSI interviewer that
she planned to have her counselor submit a letter on her behalf. However, no letter
was submitted. 
Ineffective Assistance of Counsel
          In two points of error, appellant contends that she received ineffective
assistance of counsel because her trial counsel failed to obtain the assistance of a
mental health expert and offer the testimony of the expert during the guilt/innocence
phase and punishment hearing. Appellant does not argue that her guilty plea was not
made voluntarily or knowingly. Rather, she argues that the mental health testimony
could have assisted in establishing self defense or sudden passion.
          In her third point of error, appellant contends that her trial counsel was
ineffective because he failed to object to the prosecutor’s argument regarding
appropriate punishment.
          A.      Standard of Review and Applicable Law
          A defendant is entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless or perfect counsel whose competency of representation is
to be judged by hindsight. Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App.
2006). 
          To prevail on a claim of ineffective assistance of counsel, the appellant must
show: (1) counsel’s performance was deficient and (2) this deficiency was so
prejudicial that it rendered the trial unfair. Strickland v. Washington, 466 U.S. 668,
687 (1984). The first prong of the Strickland standard requires the appellant to show
that counsel’s performance fell below an objective standard of reasonableness. Id.
at 687–88. Under the second prong, the appellant must demonstrate prejudice by
“show[ing] that there is a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different.” Id. at 694. It is not
enough for the appellant to show that the errors had some conceivable effect on the
outcome. Id. at 693. Failure to make the required showing of either prong defeats the
ineffective assistance claim. Rylander v. State, 101 S.W.3d 107, 109 (Tex. Crim.
App. 2003).
          Appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective. Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim. App.
2005). “There is a strong presumption that counsel’s conduct falls within the wide
range of reasonable professional assistance[.]” Id.; see also Strickland, 466 U.S. at
689. Appellant must overcome the presumption that counsel’s action or inaction
might be considered “sound trial strategy” under the circumstances. Weaver v. State,
265 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing
Strickland, 466 U.S. at 689, 104 S.Ct. at 2065)). Any allegation of ineffectiveness
must be firmly founded in the record, which must affirmatively demonstrate the
alleged ineffectiveness. Id. (citing Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999)).
          Generally, the record on appeal is undeveloped, and a silent record that
provides no explanation for counsel’s actions will not overcome the strong
presumption of reasonable assistance. Id. (citing Rylander, 101 S.W.3d at 110–11). 
We may not speculate to find trial counsel ineffective if the record is silent regarding
counsel’s reasoning or strategy. Id. (citing Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet.)). Nevertheless, it is not speculation to hold
counsel ineffective if a silent record clearly indicates that no reasonable attorney
could have made such trial decisions. Id. (citing Weeks v. State, 894 S.W.2d 390, 392
(Tex. App.—Dallas 1994, no pet.)). Therefore, in rare cases, the record can be
sufficient to prove that counsel’s performance was deficient, despite the absence of
affirmative evidence of counsel’s reasoning or strategy. Id. (citing Robinson v. State,
16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000)).
          When the claim of ineffective assistance is based on counsel’s failure to call
witnesses, the appellant must show that such witnesses were available to testify and
that appellant would have benefitted from their testimony. Ex parte White, 160
S.W.3d 46, 52 (Tex. Crim. App. 2004) (citing King v. State, 649 S.W.2d 42, 44 (Tex.
Crim. App. 1983)).
          B.      Analysis
          Appellant has not shown that trial counsel failed to obtain the assistance of a
mental health expert or that counsel failed to call witnesses that were available to
testify. Appellant did not move for a new trial arguing ineffective assistance, and
therefore, the record on appeal is undeveloped and provides no explanation for
counsel’s reasoning or strategy in not calling a mental health expert. 
          As evidence of counsel’s ineffective assistance, appellant points to a motion
for continuance made by trial counsel on September 10, 2007, the date of the agreed
setting. In that motion, counsel asked for a continuance to allow him to prepare for
trial, indicating that appellant had previously planned to enter a plea of guilty but
changed her mind. Counsel stated that he needed more time to prepare for trial and
“must now subpoena several necessary witnesses whose testimony is critical to the
Defendant’s defense,” including “fact witnesses and medical/mental health
witnesses.” The court granted the continuance on September 10, 2007, and reset the
case for April 28, 2008. On April 28, 2008, appellant pleaded guilty and requested
a PSI hearing, which was held on August 7, 2008. 
          Appellant argues that the statements made in the September 10, 2007 motion
for continuance clearly show that expert mental health testimony was necessary and
counsel’s failure to call such witnesses amounted to ineffective assistance. We
cannot agree.
          Appellant’s argument is flawed because it makes an inferential leap that,
because trial counsel did not call a mental health expert to testify at the PSI hearing,
trial counsel failed to seek the assistance of a mental health expert. Appellant has not
shown that trial counsel did not seek the assistance or consult with mental health
experts during the seven-month continuance. Moreover, appellant has not shown that
a mental health expert witness was available to testify and would have testified
favorably in her defense. Appellant does not point to any evidence or testimony that
could have been presented at trial but was not. Rather, she points to evidence
(largely, her own testimony) that counsel presented in the PSI hearing and was
considered by the court in assessing punishment. Appellant points to the hearing
testimony relating to alleged prior abuse and mistreatment suffered by appellant, and
asks this Court to speculate as to what a mental health expert might have to say about
“possible affect[s] [sic] of physical and mental abuse suffered by the Appellant over
her lifetime.” 
          The record here is silent as to the strategy of trial counsel in not calling a
mental health professional, and we are not permitted to speculate to find trial counsel
ineffective. See Weaver, 265 S.W.3d at 538. It is just as likely that no favorable
testimony was available. The only evidence in the record of appellant’s mental illness
is her own claims; there is no “specific, objective evidence in the record.” See
Stafford v. State, 101 S.W.3d 611, 613 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d) (distinguishing appellant’s unsupported claims of mental illness from cases
involving objective documentation). Thus, we cannot conclude that the silent record
before us clearly indicates that no reasonable attorney could have made such trial
decisions. See Weaver, 265 S.W.3d at 538 (citing Weeks, 894 S.W.2d at 392). We
hold that appellant has not adequately demonstrated that she was denied effective
assistance of counsel.
          Appellant cites several cases to support her position that the failure by counsel
to present mental health testimony constituted ineffective assistance, but each case
is distinguishable. In Miller v. Dretke, the appellant filed a habeas application
alleging ineffective assistance of counsel for failing to investigate and present
evidence from Miller’s doctors about her mental and emotional problems. 420 F.3d
356, 359 (5th Cir. 2005). As evidence of her claim, Miller attached letters from her
treating physicians detailing her psychological and cognitive problems resulting from
a car accident, in addition to an affidavit from her trial counsel in which he admitted
that he “did not prepare much,” conceded that “he could have obtained the doctors’
letters before the punishment phase of the trial,” and stated that he “should have
interviewed her doctors before trial and called them to testify in mitigation of
punishment.” Id. 
          The Fifth Circuit observed, “To establish that an attorney was ineffective for
failure to investigate, a petitioner must allege with specificity what the investigation
would have revealed and how it would have changed the outcome of the trial.” Id.
at 361 (citing United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989)). 
Additionally, the Court noted that “‘complaints of uncalled witnesses are not favored’
given that ‘the presentation of testimonial evidence is a matter of trial strategy.’” Id.
at 362 (quoting Wilkerson v. Cain, 233 F.3d 886, 892–93 (5th Cir. 2000) (citation and
internal quotation marks omitted)). The court held that the state court’s judgment that
counsel was not ineffective was an objectively unreasonable application of
Strickland, noting the evidence that trial counsel was aware of the mental and
emotional problems prior to trial, was cognizant that the injuries could be used as
mitigating evidence, and despite the knowledge, failed to contact the treating
physicians or call an expert witness at trial. Id. at 361–62, 366. Unlike Miller, in the
present case, appellant has not provided any evidence that trial counsel failed to
investigate or present evidence available to him or trial counsel’s reasoning in not
offering the testimony of a mental health expert. 
          Appellant cites to portions of Mendoza v. State that discuss the importance of
mental health expert testimony. See Mendoza v. State, 14-06-01015-CR,
14-06-01016-CR, 2008 WL 2403769, at *5 (Tex. App.—Houston [14th Dist.] June
12, 2008, pet. ref’d) (mem. op., not designated for publication). In Mendoza, the
court found that trial counsel’s performance met the first prong of Strickland because
counsel failed to conduct a thorough investigation of the appellant’s mental health
and develop the issue at trial. Id. at *13. In Mendoza, however, the appellant
presented evidence of trial counsel’s deficient performance at the hearing on his
motion for new trial. Id. Specifically, the appellant presented evidence that
Mendoza’s trial counsel was hired two days prior to trial, waived the statutory
allowance of a minimum of ten days to prepare for trial, failed to review the previous
attorney’s files, and conducted no additional research or investigation. Id. at *6. 
Various medical records, which were available to Mendoza’s trial counsel, were
admitted at the hearing, showing that Mendoza had been diagnosed with
schizophrenia and bipolar disorder. Id. at *11. Mendoza’s attorney admitted at the
hearing that he failed to hire or ask for appointment of a mental health expert. Id. 
Mendoza’s attorney did not say that his decisions were based on strategy but, instead,
justified that he did not conduct an independent investigation or hire a mental health
expert for financial reasons. Id. Unlike the developed record in Mendoza, the record
here contains no evidence that trial counsel failed to consult with mental health
experts or that he did not have a legitimate trial strategy in not calling an expert.
          It is true, as appellant cites, that “[a]n attorney has a professional duty to
present all available testimony and other evidence to support the defense of his
client.” State v. Thomas, 768 S.W.2d 335, 336 (Tex. App.—Houston [14th Dist.]
1989, no pet.). However, appellant has failed to point to any testimony or evidence
that was available. Because appellant has failed to show that mental health experts
were available to provide favorable testimony, her argument fails under the first
prong of Strickland. See Ex parte White, 160 S.W.3d at 52 (holding that, when
ineffective assistance claim is based on counsel’s failure to call witnesses, appellant
must show that such witnesses were available to testify and that appellant would have
benefitted from their testimony). 
          We overrule appellant’s first and second issues.
          In her third issue on appeal, appellant contends that her trial counsel was
ineffective because he failed to object to the prosecutor’s argument regarding
appropriate punishment. Specifically, she argues that, because she entered a plea
without an agreed recommendation as to punishment, it was improper for the
prosecutor to argue that appellant be sentenced to 40 years’ imprisonment.


 
          In her appellate brief, appellant argues that “Counsel should have objected to
any recommendation by the State as the agreement stated that Appellant would plead
guilty and go to the judge for sentencing.” (Emphasis in original.) Although her trial
counsel made a closing argument suggesting the court assess punishment by putting
appellant on deferred adjudication, appellant seems to assert that the prosecutor was
prohibited from making an argument regarding punishment. Essentially, she argues
that the guilty plea without an agreed recommendation as to punishment was an
agreement by the State not to make any recommendation as to punishment. Such an
argument reflects a complete misunderstanding of the law and the plain terms of the
agreement as admonished by the court orally and in writing. In support of this
argument, appellant cites Rule 11 of the Texas Rules of Civil Procedure and a civil
case applying Rule 11. See Tex. R. Civ. P. 11; Fortis Benefits v. Cantu, 234 S.W.3d
642, 651 (Tex. 2007). Neither of these authorities apply to a criminal proceeding. 
Appellant has failed to provide any authority to support her contention that the
argument by the prosecutor was improper or that trial counsel’s performance was
deficient for not objecting to the comment. Accordingly, appellant fails to meet the
initial burden under Strickland, requiring a showing that counsel’s performance was
deficient. See 466 U.S. at 687, 104 S. Ct. 2052. 
          We overrule appellant’s third issue.
Conclusion
          We affirm the judgment of the trial court.
 
                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Justices Keyes, Hanks, and Higley.
Do not publish. See Tex. R. App. P. 47.2(b).