**Opinion issued March 8, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

**NO. 01-15-00369-CR**

**NO. 01-15-00370-CR**

—————————————

**DANIEL WAYNE TOVAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 20th District Court
Milam County, Texas
Trial Court Case Nos. 23,522 and 24,217

## MEMORANDUM OPINION

Daniel Tovar appeals the sentence imposed on him after the trial court granted the State's motion to revoke the probation Tovar received pursuant to two plea agreements, the first for a June 2012 charge of assault—family violence, impeding

breath and circulation, a third-degree felony, and the second for the December 2013 charge of burglary of a building, a state jail felony.[1] *See* TEX. PENAL CODE ANN. §§ 22.01(a), (b)(2), 30.02(a), (c)(1) (West 2011 & Supp. 2015).

In October 2014, the trial court revoked Tovar's probation after finding that he violated its terms by committing the felony offenses of (1) unlawful possession of a firearm, (2) possession of a controlled substance with the intent to deliver, and (3) assault causing bodily injury. The trial court assessed two years' incarceration for the assault charge and an eight-year sentence for the burglary charge, with the sentences to run concurrently.

Tovar contends that he received ineffective assistance of counsel at sentencing. Finding no showing of ineffective assistance, we affirm.

## BACKGROUND

Daniel Wayne Tovar was indicted for assault family violence—impeding breathing/circulation on June 6, 2012. He reached a plea agreement with the State and received three years' deferred adjudication. The trial court entered judgment pursuant to the plea in February 2013 and imposed certain conditions on Tovar's community supervision.

---

[1]    Trial court cause number 23,522 (appeal number 01-15-00369-CR) involves the assault charge. Trial court cause number 24,217 (appeal number 01-15-00370-CR) involves the burglary charge.

In early 2014, Tovar was indicted for burglary of a building. He reached another plea agreement with the State and received four additional years of deferred adjudication for that offense.

In October 2014, Tovar was arrested for unlawful possession of a firearm and possession of methamphetamine with intent to deliver in one incident and, a week later, was arrested for assault causing bodily injury. The State moved to revoke Tovar's community supervision and proceed with adjudication in both of the underlying cases. The motions alleged that Tovar had violated several conditions of his probation by (1) committing the additional charged offenses in violation of state law; (2) failing to pay any restitution or court costs; (3) failing to submit to drug and alcohol testing; (4) wholly failing to comply with his obligation to perform community service; and (5) failing to complete the theft aversion program class or anger management program class provided by the Milam County Community Supervision and Corrections Department.

The trial court heard the State's motions in February 2015. Tovar did not contest the State's allegations. Without any agreement with the State, Tovar entered an open plea of true in both cases. The trial court accepted Tovar's pleas, ordered Tovar's probation officer, L. Sims, to prepare a Pre-Sentence Investigation (PSI) report, and set the sentencing hearing for March.

At the hearing, the trial court took judicial notice of the completed PSI report. The report contained Tovar's criminal history dating back to 1997. It showed that, including the most recent arrests in October 2014, he had been arrested a total of 14 times for, among other crimes, burglary, theft, resisting or evading arrest, assault, and unlawful possession of controlled substances. The report contains a summary of Sims's interview with Tovar concerning his educational background and his history of substance abuse.

According to the report, by age 19, Tovar was using drugs daily and selling them to support himself. After a prior revocation of probation, Tovar was sent to a treatment center, but was expelled after 30 days because he did not comply with the program. After release, Tovar returned to using drugs and resumed criminal behavior. Tovar submitted to a drug test a few weeks before the sentencing hearing and tested positive for marijuana and amphetamines. Testing results revealed that Tovar showed a high probability of having a substance abuse disorder.

Sims reported that Tovar admitted to heavy use of methamphetamines and asked her for help with his drug problems, but when Sims offered to return him to the same treatment center he had previously attended, Tovar told her that he did not believe he could successfully complete treatment there. Sims stated that she brought up the offer at another meeting, but Tovar again came up with excuses as to why the

treatment would not work for him. Based on Tovar's responses, Sims expressed doubt that treatment would be effective for Tovar.

The State called the Rockdale Police Chief T. Harris and Lieutenant J.D. Newlin to testify to Tovar's reputation for being peaceful and law-abiding. The entirety of each witness's testimony concerning Tovar consists of the response "Bad," to the question of whether Tovar had a good or bad reputation for being peaceful and law-abiding. Defense counsel declined to cross-examine either witness; the State rested.

Defense counsel examined Tovar on his prior drug and alcohol problems, his work history, and his desire for job training. Tovar admitted that drugs and alcohol have been problems for him since he was a teenager. In response to defense counsel's query, Tovar said he believed that a rehab program would be good for him and that he would willingly go to a treatment program and job training if the court so ordered.

During the State's cross-examination, Tovar admitted that he had told his probation officer that he was not interested in attending any drug and alcohol rehabilitation program. Tovar explained that he was not opposed to attending a treatment program, he was just "trying to get out of one certain rehab." Defense counsel took Tovar on re-direct, pointing out that, contrary to the PSI report's statement that Tovar had been unemployed, he did have some short-term jobs during

5

the prior year. Defense counsel rested without calling any other witnesses. The trial court revoked Tovar's probation and assessed his sentences.

## DISCUSSION

Tovar contends his trial counsel was ineffective because counsel failed to cross-examine adverse State's witnesses and failed to request a court-appointed substance abuse or mental health expert to testify at sentencing. Tovar also claims that his counsel's failure to independently investigate matters raised in the PSI report and his failure to call Tovar's probation officer to the stand constituted ineffective assistance and probably prevented the trial court from considering treatment as a meaningful option for Tovar at sentencing.

### *Standard of Review and Applicable Law*

The United States Supreme Court has established a two-pronged test for determining whether there was ineffective assistance of trial counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984). To prevail on a claim of ineffective assistance of counsel under *Strickland*, an appellant must show that (1) counsel's performance fell well below the objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.*; *Andrews v. State,* 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

The first prong of the *Strickland* test requires that the defendant show that counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The defendant must prove, therefore, by a preponderance of the evidence that trial counsel's representation objectively fell below professional standards. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The second prong requires the defendant to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson*, 9 S.W.3d at 812. "Reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Id.* A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State,* 101 S.W. 3d 107, 110 (Tex. Crim. App. 2003).

Any allegation of ineffectiveness must be firmly rooted in the record, and the record must affirmatively display the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). The appellant must prove ineffective assistance by a preponderance of the evidence and must overcome the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance or might be considered sound trial strategy. *Robertson v. State,* 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

The grant or denial of a motion to proceed with adjudication is a matter entirely within the trial court's discretion, and will not be reversed unless the trial court abused its discretion. *State v. Gonzales,* 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). An abuse of discretion occurs when the trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State*, 855 S.W.2d 667, 682 (Tex. Crim. App. 1992). Furthermore, we will not speculate to find trial counsel ineffective if the record is silent on counsel's strategy or reasoning. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). However, when no reasonable attorney could have made such a decision, the record may be sufficient to prove ineffective assistance. *See Robinson v. State,* 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000); *see Weaver v. State,* 265 S.W.3d 523, 538 (Tex. App.— Houston [1st Dist.] 2008, pet. ref'd).

*Analysis*

Defense counsel advocated for a meaningful rehabilitation for Tovar by putting him on the stand and establishing Tovar's substantial history with drug and alcohol abuse. He also offered a policy argument favoring his client in closing, asking the court to help make his client a "productive member of society." However, he did not cross-examine the chief of police or his lieutenant, call the probation officer who prepared the PSI to testify, or ask for a court-appointed expert to review the PSI report.

Tovar fails to explain how a court-appointed expert would have influenced the trial court strongly enough to send Tovar for drug rehabilitation instead of to prison. The trial court acknowledged that Tovar had a long-term drug and alcohol problem, which the State did not dispute. The problem stemmed from Tovar's equivocation about whether he was willing to accept treatment. Tovar's testimony at the sentencing hearing confirmed the PSI report's summary of Tovar's historical lack of interest in completing a treatment program and his prior unsuccessful experience in a program. In keeping with the PSI report, Tovar testified at the hearing that, "I was interested in [rehab], but just—I was trying to get out of one certain rehab." The trial court did not need expert testimony to determine the depth of Tovar's interest in and his commitment to successfully completing a drug treatment program. As a result, Tovar has not demonstrated that trial counsel's performance was inadequate in failing to request appointment of an expert or that it was reasonably probable that his sentence would have been different had trial counsel proffered expert testimony at the hearing.

Tovar contends that trial counsel should have questioned Harris and Newlin about the basis of their opinion concerning Tovar's reputation and that trial counsel's failure to cross-examine them amounts to ineffective assistance. The impact of Harris's and Newlin's brief testimony that Tovar had a "bad" reputation for being peaceful and law-abiding pales in comparison to the effect that their testimony in

9

response to such a challenge would have had. That line of cross-examination would have invited them to provide details about Tovar's lengthy arrest record, as evidenced by the PSI report. Trial counsel could have reasonably determined that by cutting off the questioning, Harris and Newlin would not have an opportunity to elaborate on Tovar's arrest record. We will not second-guess trial counsel's strategic decision to refrain from cross-examining the State's witnesses under these circumstances. *See Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013) (explaining that courts must not second-guess informed strategic or tactical decisions made by counsel during trial but instead must indulge strong presumption that counsel's conduct falls within wide range of reasonable professional assistance) (citing *Strickland*, 466 U.S. 668, 104 S. Ct. at 687)).

Tovar also complains that trial counsel provided ineffective assistance by failing to offer witnesses to rebut Harris's and Newlin's reputation testimony. Tovar, however, does not identify any potential character witness for him who was available to testify and could provide favorable rebuttal testimony, and the record contains no evidence concerning the issue or whether trial counsel considered it. We hold that Tovar has failed to overcome the presumption of counsel's effectiveness for this contention as well.

## CONCLUSION

We hold that Tovar has not satisfied his burden under *Strickland v. Washington* to show he received ineffective assistance of counsel at sentencing. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).