Opinion issued October 6, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00161-CR

———————————

Bobby Lee Jones, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 122nd District Court 

Galveston County, Texas



Trial Court Case No. 08CR1456

 



 

MEMORANDUM OPINION

A jury
convicted appellant, Bobby Lee Jones, of murder, and the trial court assessed
punishment at fifty years’ confinement.  In
one issue, appellant argues that his trial counsel rendered ineffective
assistance during the guilt-innocence phrase of trial by calling appellant’s
wife as a witness, thus allowing the State to cross-examine her, rather than
claiming a spousal privilege.  We affirm.


BACKGROUND

Appellant and the complainant, Felicia
Adrienne Scott, had an on again, off again, romantic relationship for several
years.  On May 12, 2008, Scott was at Club
D’Elegance in Galveston when she ran into an old
boyfriend, Steven Smith, and asked him for a ride to Parkland Housing Project
to pick up her car.  They left Club D’Elegance in Smith’s Lincoln at about 2:00 a.m. with one
of Smith’s friends, Demarshay Dominique Lacy.  As they made their way toward Parkland,
appellant began following them in a tan-colored SUV.  At the intersection of 35th Street and Ball
Avenue, both cars stopped and everyone exited the vehicles.  Shortly thereafter, Scott was shot four times
and died. 

Officer Robert Sanderson responded
to a dispatch call about a shooting at 35th Street and Ball.  En route to the scene, he saw appellant speeding
down Broadway towards the causeway bridge to the mainland.  Sanderson gave chase and apprehended
him.  Sanderson testified that he found a
.38 revolver in plain view on the driver’s side floorboard, and that Appellant
was fully cooperative during his arrest. 
A search also revealed a 9mm pistol in the backseat.  Testing reflected the presence of gunshot
residue on appellant’s hands, which is consistent with his “having either
recently fired a weapon, being nearby a weapon when it was discharged, or
contacting a surface that had gunshot primer residue particles on it.”    

No usable fingerprints were
detected on the two guns recovered.  DNA swabs
from the guns were also insufficient for an interpretable DNA profile but, from the available testing, appellant could not
be excluded as a contributor.  The
medical examiner testified that he could not identify what exact caliber of
bullet passed through Scott’s body, but that the wounds were caused by a medium
caliber bullet, i.e., .38, 9mm, or .40 caliber.  Two .38 bullets matching the .38 revolver in
the vehicle appellant was driving were the only bullets recovered from the
scene. 

A.   The Conflicting Testimony

At trial, conflicting stories were
presented about the events leading up to Scott’s death.  The State presented Smith and Lacy, who each testified
that appellant had followed them and began ramming into their car and shooting
at them while they were heading to Parkland. 
Smith testified that Scott knew it was appellant following them, and she
was scared, nervous, shaking, and panicked. 
During this chase, Scott begged Smith to “get me away from here,” and
told Lacy that appellant is “stalking me.”  According to Smith, an agitated Scott also
called 911, telling the dispatcher that “Mr. Jones was chasing the car that she
was in and she was trying to get away and he was ramming into the back of the
car.” 

Smith and Lacy testified that at
one point appellant smashed into Smith’s car, causing it to lose a wheel,
wreck, and come to a stop on 35th Street.  After appellant also came to a stop, he got
out of his car with a gun and approach Scott.  Smith and Lacy both testified that neither
they nor Scott had a gun at the scene.    Smith
ran up to appellant and demanded to know why appellant was chasing and shooting
his car.  Appellant ignored Smith and
continued moving towards Scott. 

Both Smith and Lacy stated they ran
away from the scene, leaving Scott with appellant.  Before fleeing, Lacy testified to hearing Scott
asked appellant “why he was tripping?” and appellant responding “Bitch, you’re
going to quit playing with me.”  Smith similarly
heard appellant say to Scott, “Bitch, you got me fucked up; you think you can
hide from me.”   

An investigator testified to
listening to the recordings of Scott’s 911 call during
this confrontation.  She heard a male
voice on the tape saying “You want to play with me? You want to play with me?”
and a female voice screaming “Bobby, leave me alone,” and “Bobby, you shot me.”


Smith testified that Scott said to
appellant: “Please don’t hurt me” and “Leave me alone. I got kids” right before
Smith saw appellant fire his weapon in Scott’s general direction.  Smith also heard additional shots after he
fled.  Lacy heard several gunshots as he
ran from the scene as well, but could not identify from which direction.  

A nearby resident who was awakened
by the sound of the crashing vehicles testified to witnessing Scott’s
shooting.  Through his window, he saw three
people—two males and a female—get out of Smith’s Lincoln and the men run off
in different directions.  He also saw a
male get out of a tan-colored SUV and confront the female, yelling “Do you want
to play with me” or “fuck with me?” and then shooting her four times.  That witness stated that these four shots
were the only ones he heard or saw that night. 
The witness then saw the shooter get back into his tan SUV and drive
off.  

Appellant contested these versions
of the events, testifying instead that he was only following Smith’s car
because he understood that Scott wanted him to. 
According to appellant, Scott instructed him to meet her outside of Club
D’ Elegance between 1:30 and 1:45 a.m. and they planned for Scott to come out
to meet him at his car unless she was with her step-father, in which case
appellant was supposed to follow her to Parkland.  Appellant claims he saw Scott leave the club
with her step-father and then ride past his car in Smith’s Lincoln.  Scott looked over at him and appellant took
this as a request that he follow the car. 

Appellant testified that he never
rammed into Smith’s car, and that it was in fact Smith that unexpectedly fired
a gun into the air while they were driving. 
He was surprised by this behavior, as well as Smith’s weaving between
lanes on the road.  Appellant stated that
when they came upon 35th and Ball Street, Smith smashed into the curb and came
to a stop.  Appellant parked his vehicle
and took a gun from the glove box and slipped it into his pants before getting
out of the car because he was concerned about how the occupants of Smith’s car
had been acting.  Scott ran up to
appellant, but he ignored her, instead confronting Smith asking, “Why is y’all
playing with me” and “Why y’all shooting?” 
According to appellant, a gunfight quickly erupted, with Smith firing at
appellant first and appellant returning fire in self defense.  Appellant testified that, while he was
shooting, he did not shoot Scott because he was aiming at Smith instead.  Appellant also stated he never fired his
weapon with intent to cause serious bodily injury or the death of Scott.  

B.   Appellant’s Wife’s Testimony

At issue in this appeal is
testimony of appellant’s wife, Bridgette Jones. 
During the guilt-innocence phase of trial, appellant’s counsel called Jones
as a fact witness.  She testified that she
and appellant have been married for 21 years, have no children together, and
that she would not lie for appellant.  She
stated that the SUV the appellant was driving on May 12, 2008 was hers, that
the gun in the glove box belonged to appellant’s nephew, and that she had
inadvertently left it in the vehicle.  She
further testified that when she retrieved the vehicle from impound after
appellant’s arrest, it was not damaged at all except for a missing piece of
chrome, contrary to testimony that appellant had used the vehicle to ram into
Smith’s car. 

On cross-examination, Jones
testified that her husband called her right before he was arrested and stated
that he had “shot somebody.”  She also testified
that when she called the police station to inquire about getting the vehicle
appellant was driving released, she stated that her husband was in jail because
“he had killed somebody.”  Jones clarified,
though, that she only said that because she had heard from a detective that was
the reason for her husband’s incarceration. 

Ineffective Assistance of Counsel

In a single point of error, appellant
contends that he was denied effective assistance of counsel during the
guilt-innocence phase of his trial, because his counsel failed to assert
appellant’s husband-wife privilege under Texas Rule of Evidence 504. 

A.  
Standard of Review

The United States Supreme Court has
established a two-pronged test for determining whether there was ineffective
assistance of trial counsel.  Strickland v. Washington,
466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984).  To prevail on a claim under Strickland, an appellant must show that
(1) counsel’s performance fell below an objective standard of reasonableness
and (2) but for counsel’s unprofessional error, there is a reasonable
probability that the result of the proceeding would have been different.  Id.; Andrews v. State,
159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Strickland’s first
prong requires that the defendant show, by a preponderance of the evidence,
that trial counsel’s representation objectively fell below professional
standards.  Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002); Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Strickland’s
second prong requires the defendant to show a “reasonable probability”—i.e., “probability sufficient to undermine
confidence in the outcome”—that, but
for counsel’s unprofessional errors, the result of the proceeding would have
been different. Thompson, 9 S.W.3d at 812. A failure to make a showing under either
prong defeats a claim for ineffective assistance. Rylander v. State, 101 S.W.3d
107, 110 (Tex. Crim. App. 2003). 

An allegation of ineffectiveness
must be firmly founded in the record, which must demonstrate affirmatively the
alleged ineffectiveness. Thompson, 9 S.W.3d at 813.  To
establish ineffective assistance, the appellant must overcome the strong
presumption that counsel’s conduct falls within the wide range of reasonably
professionally assistance or might reasonably be considered sound trial
strategy. Robertson v.
State, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). We will not
speculate to find trial counsel ineffective when the record is silent on his
counsel’s reasoning or strategy, Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.),
and we are especially hesitant to declare ineffective assistance based upon a
single alleged miscalculation, during what amounts to otherwise satisfactory
representation.  Thompson, 9 S.W.3d at 814. 

In rare cases, the record can be
sufficient to prove that counsel’s performance was deficient, despite the
absence of affirmative evidence of counsel’s reasoning or strategy.  Robinson
v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).
 Such cases are limited to occasions
where no reasonable attorney could have made such a decision.  Weaver
v. State, 265 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).

Under Strickland’s second prong, the appellant must show that counsel’s
deficient performance actually prejudiced or harmed his defense.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064. This requires a
showing that counsel’s errors undermined the confidence in the result from
trial.  Ex parte Ellis, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007);  Jaenicke v. State, 109 S.W.3d 793, 797 (Tex. App.—Houston
[1st Dist.] 2003, pet. ref’d).  

B.  
Husband-Wife Privilege

The spouse of a criminal defendant
has a privilege not to be called as a witness for the State. Tex. R. Evid.
504(b)(1).  A
spouse who nonetheless testifies on a defendant’s behalf is then subject to
cross-examination. Tex. R. Evid. 504(b)(1). 

C.  
Analysis 

Appellant argues that his counsel
was ineffective because, until his counsel called his wife Jones to the stand, the
State had no legal right to extract her testimony about his cell phone call
before his arrest in which appellant told Jones he was about to be arrested for
shooting someone.  Appellant contends
that counsel’s failure to know or utilize his spousal privilege resulted in
ineffective assistance since Jones essentially made “a vicarious confession on
behalf of the [a]ppellant.”  According to appellant, this “harm could not
be cured” and her testimony could not be supported by any reasonable trial
strategy.  Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); see also Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

The State on the other hand points
to elements of Jones’s testimony that could have helped appellant such that
having her testify could have been part of a reasoned trial strategy.  For example, Jones brought out that appellant
was a family man that had been married 21 years.  She also explained that the gun used in the
shooting was in the vehicle appellant was driving by accident, implying that
appellant was not a “gun-toting guy looking for this kind of trouble.”  She also testified that her vehicle was not
damaged, which was potentially inconsistent with testimony that appellant had
rammed into Smith’s car.  Thus, the State
argues, appellant cannot demonstrate that his counsel’s calling his wife to
testify amounted to ineffective assistance of counsel under the first prong of Strickland. 

In addition, the State argues that
the appellant has not demonstrated a reasonable probability that, but for
counsel’s alleged error, the outcome would have been different under Strickland’s second prong.  According to the State, Jones’s testimony
that appellant told her he shot someone “hardly mattered since Appellant
himself testified that he had been in a gunfight.”  Given the testimony of the various
eyewitnesses and investigators, the State insists that “there is no reasonable
probability a factfinder would have a reasonable
doubt of Appellant’s guilt” regardless of Jones’s testimony.      

Appellant has failed to
demonstrate, by a preponderance of the evidence, any prejudice to his defense
caused by his wife’s testimony as required under Strickland’s second prong. 
Although appellant claims that trial counsel was effectively creating a
reasonable doubt during the guilt and innocence phase of his trial until his
wife testified about him telling her “he shot somebody,” the record reflects
that the jury had heard substantial evidence supporting its guilt finding. 

Two witnesses, Smith and Lacy, who
were driving with Scott testified that the appellant
chased and fired at them.  Smith saw the
appellant fire a gun in Scott’s direction and heard additional shots as he ran
from the scene.  Lacy saw the appellant
exit his truck with a gun, and heard gunshots as he fled.  An eye witness to the murder saw a male
fitting appellant’s appearance exit an SUV and shoot four times at a female.  Contrary to appellant’s contention that there
was a gunfight, this witness heard only those four shots and saw only one gun
on the night of the murder.  Appellant
himself testified to shooting at someone that night, although claiming self-defense.
 During her 911 call, Scott herself
identified appellant as the one who shot her. 


Given the overwhelming weight of
the evidence presented to the jury, appellant has not demonstrated that a
different verdict would have been returned had his wife not testified as she
did.  Thus, appellant has failed to
satisfy the second prong of Strickland.
Andrews, 159 S.W.3d
at 102. 

Having concluded that appellant has
not demonstrated his trial counsel rendered ineffective assistance of counsel,
we overrule appellant’s single point of error. 


CONCLUSION

We affirm the judgment of the trial
court. 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

Do
not publish.   Tex. R.
App. P. 47.2(b).