# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00132-CR

**Robert John Morgan, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. D-1-DC-09-206490, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a non-jury trial, the trial court found Robert John Morgan guilty of possession with intent to deliver methamphetamine and assessed punishment of twenty-five years in prison. On appeal, Morgan challenges the trial court's denial of his motion to suppress evidence. We will affirm the denial of the motion to suppress as well as the judgment of conviction.

## Background

This case centers around the November 5, 2009 search and seizure of items from a trailer home in which appellant and his girlfriend, Christi Boone, were sleeping overnight. Appellant filed a motion to suppress evidence obtained pursuant to a search warrant and sought a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). He alleged

> that the allegations contained in the affidavit are either intentionally false or made with a reckless disregard for the truth. In particular Defendant would show that Affiant did not have sufficient knowledge to cite the confidential informant as "credible and reliable" or that the informant had recently provided information that led to the seizure of narcotics.

Appellant sought dismissal of all charges as fruits of an illegal search and arrest. The motion was heard as part of the trial to the court.

The owner of the trailer, Lisa Berger, testified that she allowed appellant to move into the trailer in April 2009. He joined her uncle, David Riojas, who was already living in the trailer. Berger testified as follows regarding appellant's tenure at the trailer:

Q. And do you recall how long [appellant] actually resided there?

A. Just a couple months.

Q. And was there any particular reason that he left?

A. Because him and David bumped heads a lot, and he didn't want to cause trouble between me and my family.

Q. So if he came out in April, then he was there maybe May, June?

A. Sounds good.

Q. And after that time, then June of '09, he no longer lived there?

A. No.

Q. But David Riojas did?

A. Yes.

Berger agreed that appellant "had the right to be there [in the trailer] at some point," but did not testify that he had that right in November 2009. She did not know who had access to the trailer other than her uncle and did not know how appellant got into the trailer in November 2009. When asked if she would be in any position to know whether appellant lived in the trailer in November 2009, she said "I mean, probably not. No."

Appellant's girlfriend, Boone, testified about the various places that she and appellant lived after they moved out of the trailer—a couple of motels, her mother's home, a friend's home, and a trailer they rented. She testified that they went to Berger's trailer occasionally to deconstruct appliances for their resellable metals. She said that appellant did not keep personal items at the trailer. When the search occurred, his belongings were at the motel room they had reserved for the week of November 1-8, 2009. Boone testified that, on November 4, 2009, they bought some groceries and went out to the trailer to cook them because she was "tired of eating at the IHOP." They let themselves in using a key that was left on top of the door. She said that she saw former roommate Riojas's belongings in the trailer—a television, clothes, furniture, and knickknacks. Boone said they did not plan to stay the night, but after they got into an argument, appellant went to another room to be alone and they both fell asleep. Staying at the trailer had the advantage of being closer than their motel to where she thought her daughter was staying. Boone said that her sleep was interrupted by a friend who they had told about the trailer stopping by and leaving a bag. Boone was not surprised by his entry because "people came in and out of that house." Sometime later that morning, police executed the search warrant.

The trial court concluded that appellant had standing to challenge the search, but denied the motion to suppress. The court found appellant guilty and assessed sentence.

**Standard of review**

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The trial court's ruling on the motion to suppress will be affirmed if it is

3

reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

We apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458. We afford almost total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Id.* All purely legal questions are reviewed de novo. *Id.* At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We afford almost total deference to a trial judge's determination of historical facts when they are supported by the record. *Johnston*, 336 S.W.3d at 657.

## Discussion

We will address appellant's standing to contest the search warrant. Although the trial court did not issue written findings of fact and conclusions of law, it did announce at the final hearing, "I don't doubt that he has standing to contest the search of the trailer."

In order to have standing to seek to suppress evidence on the ground that it was obtained in an unconstitutionally unreasonable search and seizure, a defendant must show that he had a reasonable expectation of privacy violated by the government. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 38.23; *Emack v. State*, 354 S.W.3d 828,

4

834 (Tex. App.—Austin 2011, no pet.); *see Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978); *see also Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) (describing standing under Fourth Amendment); *Richardson v. State*, 865 S.W.2d 944, 948-49 (Tex. Crim. App. 1993) (describing standing under Article I, § 9). The defendant has the burden to show that he had a subjective expectation of privacy in the place searched that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).

Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo. *Kothe*, 152 S.W.3d at 59. In considering whether an appellant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including whether: (1) the defendant had a property or possessory interest in the place searched; (2) he was legitimately in the place searched; (3) he had complete dominion or control and the right to exclude others; (4) he took normal precautions, prior to the intrusion, customarily taken by those seeking privacy; (5) he put the place to some private use; and (6) his claim of privacy is consistent with historical notions of privacy. *Granados*, 85 S.W.3d at 223. This list of factors is not exhaustive, nor is any one factor dispositive of an assertion of privacy. *Id.*

An "overnight guest" has a legitimate expectation of privacy in his host's home. *Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008) (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)). However, the legitimate privacy expectation of an overnight guest does not extend to a casual visitor or guest who is merely present with the consent of the homeowner. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). In the *Carter* case, two men came from out of state to an apartment they had not previously visited in order to package cocaine. They stayed for two-and-a-half hours and gave the lessee some cocaine as compensation for their use of the apartment. *Id.*

5

at 86. The court distinguished these visitors from invited overnight guests who have legitimate expectations of privacy while they sleep as guests in someone else's home. *Id*. at 89 (citing *Olson*, 495 U.S. at 98-99). These visitors were not overnight guests, were present for a business purpose, were only present for a few hours, had no pre-existing relationship with the lessee, and produced no evidence showing acceptance by their host indicating a relationship conferring the protections afforded to overnight guests. *Id*. at 89-90. The Fourth Amendment did not protect the visitors from the search of the apartment. *Id.* at 90.

A resident of an apartment can lose his reasonable expectation of privacy when the named lessee tells him he must move out. *Granados*, 85 S.W.3d at 226. In that case, the appellant was invited by his friend to live with her in her apartment until he "got on his feet." *Id.* at 221. After less than a month, he and his host argued and she instructed him to leave. Despite a cooling-off period, appellant did not leave and instead stabbed and injured his host and stabbed and killed her son. *Id.* The host's concerned family called police, who forced open the door and discovered the crime scene. *Id.* at 221-22. Appellant moved to suppress evidence found inside the apartment, arguing that it was obtained through an unreasonable search and seizure. *Id.* at 222. The court of criminal appeals held that courts examining the reasonableness of a guest's privacy expectation must focus on the host's decisions. Letting others in reduces the reasonableness of an expectation of privacy, and revocation of the guest's permission to be on the premises eliminates the reasonableness of the guest's expectation of privacy (after passage of a reasonable time to remove his belongings). *Id.* at 224-25. The court of criminal appeals affirmed the trial court's denial of the motion to suppress, finding that appellant had no expectation of privacy once his host told him to leave and he had a reasonable amount of time to gather his belongings and leave. *Id.* at 226. In *Weaver v. State*, the court of appeals affirmed the trial court's denial of a motion to suppress, finding that the

6

appellant had not shown he had a reasonable expectation of privacy in an apartment where he was found sleeping in the afternoon. 265 S.W.3d 523, 533-34 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). He had a key to the apartment, was there often enough that the police knew to look for him there, and testified that he had permission to be there and had stayed there for several weeks. *Id.* at 534. The court of appeals held, however, that the trial court could have reasonably disregarded his testimony and, without that evidence, reasonably concluded that the record did not support the proposition that Weaver had the rights of an invited overnight guest. *Id.*

The record here does not support a finding that appellant was an invited overnight guest or had any status giving him a legitimate expectation of privacy in the trailer. Although he undisputedly lived in the trailer at Berger's invitation from April 2009 to June 2009, the termination of his residency weighs against the legitimacy of his privacy expectations in November 2009. Undisputed evidence shows that appellant moved out because he did not get along with Riojas, who remained an invited and known occupant of the trailer on the date of the search. There was no evidence that appellant had resolved his conflict with Riojas or had received permission from him or Berger to enter the trailer on November 4, 2009. Berger's testimony clearly indicated that she believed appellant's residency had ended. Although Berger agreed that appellant "at some point" had the right to be in the trailer, she said he "lived there for two months" and agreed that he "no longer lived there." She testified that, because she did not keep close tabs on the property, she could not say for sure whether appellant was living there in November 2009, but there is no evidence that her lack of awareness rose to the level of invitation for him to resume his residency, however briefly. Berger said she was unaware of how appellant might have entered the trailer. There is no indication that appellant attempted to exclude anyone from entering the trailer. Rather, the only evidence is that he told a friend about the trailer (and the key above the door) and that the friend entered the trailer

7

unannounced and unchallenged late at night. As Boone testified, "people came in and out of that house." The evidence at the trial at best shows that appellant was a former resident of the trailer who, despite having apparently unresolved incompatibility with the sole resident of the trailer, entered the trailer in the absence of that resident without invitation and incidentally remained after falling asleep despite having rented a motel room for that night.

On this record, appellant failed to prove that he had either a subjective expectation of privacy or a privacy interest that society is prepared to accept as reasonable. Because we conclude as a matter of law that appellant did not have a legitimate privacy interest in Berger's trailer, we conclude that he lacked the capacity to challenge the validity of the search warrant. Although our conclusion differs from the trial court's stated conclusion that appellant had standing, we conclude that the trial court did not err by denying the motion to suppress. We need not address the remainder of appellant's arguments because he has failed to show the legal capacity to raise them here.

**Conclusion**

We affirm the denial of the motion to suppress and the judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed: June 21, 2013

Do Not Publish

8