**Opinion issued October 4, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NOS. 01-15-00501-CR
## 01-15-00506-CR

———————————

**MARCOS DANIEL JIMENEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 13CR1173 & 13CR1517**

---

## MEMORANDUM OPINION

A jury convicted appellant, Marcos Daniel Jimenez, of two charges of aggravated robbery, each enhanced with one prior felony, and assessed his punishment at 25 years' confinement on each conviction, which the trial court ordered to run concurrently. On appeal, appellant contends: 1) the evidence is

legally insufficient to support the conviction; 2) the trial court's findings of fact and conclusions of law are unconstitutional and legally insufficient to support appellant's conviction; and 3) the trial court erred in overruling appellant's motion to suppress his confession. We affirm.

## BACKGROUND

### I. The Robbery

On April 5, 2013, friends Angela Mendoza and Christopher Burnett met at a carwash in La Marque, Texas around 11:00 p.m. to talk and catch up. Mendoza was driving a green Chevrolet Avalanche and Burnett was driving a white Chevrolet Malibu. Once they both arrived at the car wash, Mendoza got out of her Avalanche and into Burnett's Malibu. Mendoza sat in the passenger seat while Burnett was in the driver's seat.

After about ten minutes, a gunshot was fired at the car's back window and at least two men approached the car. The first man, while pointing a pistol at Mendoza's face, told her to get out of the car and asked for her money. After Mendoza complied, he hit her in the mouth with the pistol. Meanwhile, the second man told Burnett to get out of the car, searched his pockets, and took around $1,000 and Burnett's cell phone. After the robbers threatened to shoot Mendoza and Burnett, the robbers told them to leave. The first man drove off in Burnett's Malibu and the second man drove off in Mendoza's Avalanche.

2

Mendoza and Burnett ran away from the car wash towards a convenience store. As they ran, a passing police car turned on to the street and Burnett got his attention. Burnett told the officer that he and Mendoza had been robbed. Mendoza was crying and her lip was split and bleeding. Two other officers arrived on the scene and a bullet shell casing was recovered and recorded as evidence. Both vehicles were registered as stolen the case was assigned to Detective S. Sanders from the Auto Crimes Task Force.

## II. The Investigation

During midnight patrol on April 7th, Officer D. Heckard saw a green Chevy Avalanche that fit the description of Mendoza's stolen vehicle. After alerting dispatch and confirming the license plate number matched, Officer Heckard initiated a traffic stop. The driver was identified as Andrew Madria. Madria was taken into custody and transported to jail. The next day, Detective Sanders went to the Texas City Police Department to interview Madria. After the interview and based on Madria's information, Detective Sanders began searching for one black male and one Hispanic male believed to be involved in the robbery.

The next day, Detective Sanders interviewed Madria a second time. Based on information gathered from this interview, Detective Sanders went to the EconoLodge hotel in Texas City in pursuit of the Hispanic male Madria had described and a female, Latrice Beck. After being unable to speak with the

3

manager, Detective Sanders returned to the EconoLodge the next day and watched surveillance video for Saturday, April 6th. On the video, Detective Sanders saw a Hispanic male and Latrice Beck go into and out of a motel room. Detective Sanders requested and obtained the registration information for the room and learned it was registered to appellant. Because appellant matched all Madria's descriptions, she requested a copy of the video surveillance and set up a photo lineup array with appellant's picture included. Detective Sanders showed the photo array to Mendoza and Burnett, but they were unable to identify appellant.

Appellant had previously filed an assault report with the La Marque Police Department, and Detective Sanders used the information he had provided to contact him. Sanders told appellant that she wanted to meet with him about the assault report, and he agreed to meet her at a fast food restaurant near the police department. Appellant and Detective Sanders met at the fast food restaurant, and Detective Sanders asked if they could move their conversation to the police department. Appellant agreed and followed Detective Sanders in his car to the police department. Once inside, Detective Sanders told appellant she wanted to speak with him about an aggravated robbery that occurred on April 5th. Appellant agreed to speak with Detective Sanders and they went into the interview room.

4

In the interview, appellant implicated himself in the armed robbery that occurred on April 5th. After the interview, Detective Sanders explained what would happen next, and appellant left the station.

Appellant was arrested on April 30th and indicted along with two others on two counts of aggravated robbery. Appellant filed a motion to suppress his statement to Detective Sanders, alleging that it was involuntarily made.

## III.   Motion to Suppress Hearing

At the hearing on appellant's motion to suppress, Detective Sanders testified that at the police station, she told appellant her real reason for contacting him was not the assault report he filed, but the aggravated robbery that occurred on April 5th. She testified that that she told appellant she had spoken with Madria and had seen appellant on video surveillance footage at the EconoLodge. Appellant agreed to give a voluntary statement if Detective Sanders did not tell his fiancé that he was at the EconoLodge with another woman. Detective Sanders testified that she agreed because she had no reason to contact appellant's fiancé and tell her that information for the investigation. Officer Sanders also testified that she read appellant the waiver of rights, gave him a second copy to read along, and that he signed the waiver. In the waiver, appellant was informed that he had the right to remain silent, and that if he decided to answer questions he still had the right to stop answering questions at any time. In the signed waiver, appellant stated:

5

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Officer Sanders further testified that she told appellant she would tell the District Attorney's office that appellant cooperated, but she acknowledged that she had no authority to make any deals or promises with him.

Detective Sanders also stated that appellant was not in custody, was free to go at any time, and, in fact, was permitted to leave the police department in his own vehicle. Detective Sanders denied telling appellant she would arrest appellant's girlfriend, Latrice Beck, as an accessary if he did not give Detective Sanders a statement. She also denied telling appellant Beck's children could be taken from her. Detective Sanders stated that appellant did not appear under the influence of drugs at the time of the interview. When asked by appellant's counsel, Detective Sanders stated that she did not recall appellant refusing to talk at first or her telling appellant that he would not have another chance to talk. Detective Sanders also testified that she asked appellant to be honest and not lie, which was not a demand but a "personal preference." Counsel for appellant did not make any arguments as to why appellant's statement was involuntary. The trial court denied the motion to suppress.

## IV. Trial

At trial, Burnett described the man who told him to get out of his car and took his money and cell phone as a Hispanic male with a facial tattoo. Mendez also identified that person as a Hispanic male with a teardrop tattoo by his eye, a neck tattoo, and a shaved head. Detective Sanders testified that the Hispanic male described to her by Madria, who was said to be involved in the aggravated robbery, had several tattoos, possibly including a teardrop tattoo, near his eye. She also testified that appellant met the description Madria gave her, which is why she contacted him after spotting him on surveillance tape at the EconoLodge.

## V. Verdict and Judgment

In the jury charge, the jury was given instructions on aggravated robbery and also the lesser offenses of robbery and theft from a person. The jury was also instructed the following about appellant's statement at the police station:

> You are instructed that unless you believe from the evidence beyond a reasonable doubt that the alleged confession or statement introduced into evidence was freely and voluntarily made by the defendant without compulsion or persuasion, or if you have a reasonable doubt thereof, you shall not consider such alleged statement or confession for any purpose nor any evidence obtained as a result thereof.

The jury found appellant guilty of aggravated robbery on each charge and assessed punishment at 25 years' confinement and a $4,000 fine for each conviction.

7

## VI.    Findings of Fact and Conclusions of Law

Appellant timely appealed, and this Court abated the appeal for the trial court to enter written findings of fact and conclusions of law regarding the motion to suppress appellant's statements as involuntary.    The trial court made the following findings:

Findings of Fact

1.  Defendant was charged in this case with Aggravated Robbery.

2.  Prior to being arrested for that charge, Defendant was interviewed by Detective Sabrina Sanders of La Marque Police Department.

3.  Defendant's name was given to Detective Sanders by a co-defendant, Andrew Madria.

4.  Defendant agreed to speak with Detective Sanders and gave a video statement.

5.  Defendant signed a waiver of rights prior to giving his statement, after being instructed on his "Miranda" rights.

6.  Defendant's statement implicated him in the aggravated robbery.

7.  Defendant was not under arrest or in custody when he gave the statement.

8.  Detective Sanders told Defendant she would tell the District Attorney's office that he had cooperated.

9.  At the hearing on Defendant's Motion to Suppress, his counsel questioned Detective Sanders about whether she had threatened to have his girlfriend arrested or had threatened to have her children taken from her.

8

10. Detective Sanders denied making both of those threats.

11. In his closing argument at the Motion to Suppress hearing, counsel for Defendant did not argue the confession was not given freely and voluntarily.

12. The Court denied the Motion to Suppress, finding the statement had been given freely and voluntarily.

13. Defendant did not testify at trial.

14. The Charge of the Court instructed the jury it should not consider the confession contained within the statement unless it found beyond a reasonable doubt that the statement was given freely and voluntarily.

15. Defendant was convicted by the jury, and subsequently sentenced to 25 years in the Texas Department of Criminal Justice.

Conclusions of Law

1. The Trial Court found the statement by Defendant to have been given freely and voluntarily.

2. The Trial Court instructed the jury not to consider the statement unless it found beyond a reasonable doubt the statement had been given freely and voluntarily.

3. Defendant was convicted of the offense of aggravated robbery, therefore, the jury found the statement had been given freely and voluntarily.

Appellant continues his appeal, now with a complete record, including the findings of fact and conclusions of law. Appellant was also permitted to rebrief his case in light of the trial court's findings and conclusions.

# ISSUES ON APPEAL

Appellant raises three main issues in his amended brief: 1) the evidence is legally insufficient to support the conviction; 2) the findings of fact and conclusions of law were procedurally and constitutionally inadequate; and 3) the trial court erred in denying appellant's motion to suppress.

We need not address appellant's additional issue that the trial court failed to make findings of fact and conclusions of law regarding the voluntariness of appellant's confession because this Court abated the initial appeal to the trial court to make the proper findings. Therefore, we will first address appellant's challenge to the sufficiency of evidence.

## I. The Evidence is Legally Sufficient

### A. Standard of Review

Based on the premise that appellant's confession should have been suppressed, appellant argues that the evidence is legally insufficient to find him guilty of aggravated robbery beyond a reasonable doubt. In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A confession admitted into evidence will be considered along with all other evidence, even if it was improperly admitted. *See Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004) ("[A]n appellate court 'must consider all evidence which the jury was permitted, whether rightly or wrongly, to consider.'") (quoting *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988)); *see also Howley v. State*, 943 S.W.2d 152, 155 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ("In [reviewing legal sufficiency], we consider all of the evidence which was before the jury— whether correctly or incorrectly admitted."). The jury is the sole judge of the facts, witness credibility, and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

### B. Analysis

A person commits aggravated robbery if, during the course of a robbery, the person uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03 (a)(2) (West 2011). Appellant argued at trial that the State failed to prove beyond a reasonable doubt that it was appellant who participated in the aggravated robbery. Appellant argues that without the confession, the only evidence supporting his conviction is a vague physical description. Even if, as appellant contends, his

confession was erroneously admitted, this Court must consider it in reviewing the legal sufficiency of the evidence. *See Moff*, 131 S.W.3d at 489.

Additionally, the State produced more evidence than just the confession and vague physical descriptions, as asserted by appellant. The jury heard Mendoza describe the person who threatened Burnett with a gun as a Hispanic male with a teardrop tattoo near his eye, a neck tattoo, and a shaved head. Burnett testified that it was a Hispanic male with a facial tattoo who had a gun and told him to get out of the car. Sanders interviewed Madria, who was found driving Mendoza's stolen car, and Madria described a person involved in the aggravated robbery as a Hispanic male with a teardrop tattoo by his eye who could be found at a nearby EconoLodge. Detective Sanders testified that video footage from the EconoLodge corroborated Madria's statements, and showed appellant had stayed at the EconoLodge the day after the robbery.

Furthermore, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. Given the evidence of appellant's confession, his connection to the stolen vehicle, his similar appearance to the complainants'

descriptions, as well as Madrias's description, a rational jury could have concluded that appellant participated in the aggravated robbery.[1]

## II. Findings of Fact and Conclusions of Law after Abatement Are Proper

Appellant argues generally that the subsequent findings of fact and conclusions of law made by the trial court after this Court abated the case violate his due process rights. It is a long established Federal law principle that a criminal defendant has a constitutional right to object to the use of their confession "and to have a fair hearing and a reliable determination on the issue of voluntariness . . . uninfluenced by the truth or falsity of the confession." *Jackson v. Denno*, 378 U.S. 368, 377 (1964). In Texas, this is codified in article 38.22 of the Texas Code of Criminal Procedure, which requires that when a question is raised as to the voluntariness of an accused's statement, the trial court must make an independent finding, in the absence of the jury, as to whether the statement was made voluntarily. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2016). The court must enter a written order stating its conclusion, including "the specific finding of facts upon which the conclusion was based." *See id.*; *Vasquez v. State*, 411 S.W.3d

---

[1] Appellant argues in one sentence that without findings of fact and conclusions of law, the jury instructions regarding appellant's voluntary statement mirrored the "New York" procedure which was overruled in *Jackson v. Denno*, 378 U.S. 368, 377 (1964). However, because appellant did have a hearing on voluntariness and subsequent findings of fact and conclusions of law were made, it was not error to instruct the jury to consider appellant's statement just like any other piece of evidence. *See Denno*, 378 U.S. at 394 (holding a new trial not constitutionally necessary when confession is determined to be voluntary by trial court, properly considered by jury, and found voluntary by jury)

13

918, 920 (Tex. Crim. App. 2013) (holding that written findings are required in all cases concerning voluntariness).

If no written findings are made by the trial court and the motion to suppress is challenged on appeal, the court of appeals must abate the appeal to the trial court to make the appropriate written findings of fact and conclusions of law. *Vasquez*, 411 S.W.3d at 920. This is required because appellate courts need a basis upon which to review the trial court's application of law to facts. *See State v. Cullen*, 195 S.W.3d 696, 698–99 (Tex. Crim. App. 2006). Without findings of fact and conclusions of law, appellate courts are "left in the undesirable position of having to make assumptions about the reasons for the trial court's decision." *Id.* at 698.

Appellant argues that abating the appeal was unfair, did not satisfy *Jackson v. Denno*, and that the only "remedy" is an acquittal. Appellant urges that the trial court would be basing the findings of fact and conclusions of law on a "cold" record and that it is impossible to make accurate findings in retrospect. *Jackson v. Denno*, however, addresses these issues. *See generally Denno*, 378 U.S. at 394–95. The Court in *Jackson v. Denno* held that a lower court could remedy an error even after the guilty verdict was rendered by holding a hearing to determine the specific facts and conclusions of law regarding voluntariness of the defendant's confession. *Denno*, 378 U.S. at 392–95. Furthermore, the Texas Court of Criminal Appeals has long required trial courts to make post-verdict findings of

14

facts and conclusions of law regarding voluntariness when the record on appeal did not contain them. *See McKittrick v. State*, 535 S.W.2d 873, 876 (Tex. Crim. App. 1976) (holding cases on appeal with fact issues concerning voluntariness of a confession should be abated to enable the trial court to make fact findings in writing); *see also Dykes v. State*, 649 S.W.2d 633, 636 (Tex. Crim. App. 1983) ("We abate the appeal and direct the trial judge to reduce to writing his findings of fact and conclusions of law on the disputed fact issues surrounding the taking of appellant's confession.").

In this case, this Court properly abated the appeal to trial court. The same trial judge that ruled on the motion to suppress initially made the necessary findings of fact and conclusions of law. Thus, these findings reflect the trial court's basis for denying the motion and the problem of a "cold" record is not relevant here. *See Garcia v. State*, 15 S.W.3d 533, 535-36 (Tex. Crim. App. 2000) (holding there is no issue of a "cold" record if the appeal is abated to the same trial judge that made the initial findings). The proper procedure was followed in this case and did not violate appellant's Due Process rights.

## III. The Motion to Suppress was Properly Denied

### A. Standard of Review

Appellant also argues that even with the findings of facts and conclusions of law, his statement to Officer Sanders should have been suppressed for the

procedural reasons above. We review the trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give almost total deference to the trial court's determination of facts, while we conduct a de novo review of the trial court's application of the law to those facts. *Foster v. State*, 101 S.W.3d 490, 495 (Tex. App.—Houston [1st Dist.] 2002, no pet.). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the credibility of witnesses, *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002), and may choose to believe or to disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When we review a ruling on the trial court's application of law to the facts, we view the evidence in the light that most favors the ruling. *Guzman*, 955 S.W.2d at 89; *Weaver v. State*, 265 S.W.3d 523, 532 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

A statement of an accused may be used in evidence if it appears that the statement was "freely and voluntarily made without compulsion or persuasion." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). A confession is involuntarily made when it was "unlikely to have been the product of a rational intellect and a free will." *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989). To determine voluntariness, the court must "examine the totality of the

16

circumstances surrounding the acquisition of the statement." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The burden of proof is on the State to demonstrate the defendant waived their rights and made a voluntary statement. *Howard v. State*, 482 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

### B. Finding of facts and conclusions of law were legally sufficient to find appellant's confession was voluntary

Appellant's brief does not argue that there is evidence of circumstances that would render appellant's confession involuntary. Rather, appellant continues to argue that certain findings of fact are insufficient evidence, conclusory, and violate Due Process. The procedural issues appellant raises are addressed above, but even if the specific findings appellant argues were inadequate by themselves, the evidence taken as a whole would still be sufficient to find appellant's confession was voluntary.

Courts look at the totality of the circumstances to determine voluntariness and when that determination revolves around facts and credibility, we give the court almost total deference. *Busby v. State*, No. 01-04-01210-CR, 2008 WL 659653, at *4 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. ref'd) (not designated for publication). In this case, the same trial court that initially denied the motion to suppress found that appellant agreed to speak to Detective Sanders, that he signed a waiver of his rights, and that he was not under arrest or in custody

when he gave his statement. In the waiver of rights, appellant acknowledged that he knew what he was doing and that no threats or promises had been made to coerce a statement. The trial court also found that Detective Sanders told appellant she would tell the District Attorney appellant cooperated, and that Detective Sanders denied threatening to have appellant's girlfriend arrested or take away her children. Given that the trial court is free to believe or disbelieve any part of witness testimony, *State v. Maldonado*, 176 S.W.3d 419, 421 (Tex. App.—Houston [1st Dist.] 2004, no pet.), there is sufficient evidence to support the trial court's conclusion that appellant's confession was voluntarily made and did not violate his due process rights.

### C. It was proper for the trial court to review the confession video

Similarly, appellant argues that the trial court erred in watching appellant's videotaped confession during the hearing on voluntariness. Appellant argues that "ideally" the court in a pretrial hearing should not hear the specific content of a confession when determining voluntariness because it would contaminate the determination. However, this proposed procedure has no support in law. In fact, videotaped confessions help the trial judge assess the credibility of the witnesses at the hearing and compare historical facts to what the trial judge observes in the video. *See Leza v. State*, 351 S.W.3d 344, 352 (Tex. Crim. App. 2011) (reasoning

that by watching appellant's videotaped statements, the trial judge could measure testimony regarding voluntariness of defendant's waiver himself).

**D. The confession video was properly admitted**

Appellant also suggests that the trial court erred in admitting appellant's statements to the jury because, at the time of the statement, he had recently been treated for a drug overdose and was on bipolar medications.[2] Because information about appellant's bipolar medication was not introduced until after the jury verdict, during the punishment phase of the trial, we will not consider this issue on appeal. *See Jones v. State,* 944 S.W.2d 642, 650-51 (Tex. Crim. App. 1996) ("We may only review evidence that was before the trial judge when he was asked to render a decision on this matter.").

Thus, the only possible link between appellant's statement and drug intoxication came during the hearing on the motion to suppress in the following exchange between appellant's counsel and Detective Sanders:

Q. Now, when you were talking to him, you knew he had been treated for drug overdose; isn't that correct?

A. During the interview, yes, which occurred approximately three days prior to the robbery.

---

[2] Appellant's amended brief after the trial court made findings of fact and conclusions of law still argued that appellant's statements were wrongfully admitted to the jury because there were no specific findings of fact on whether the statement was made voluntarily. Because this was remedied, we do not address that argument here.

Q. You realized he was under the influence at the time you interviewed him; isn't that correct?

A. No, sir.

Additionally, the trial judge was able to observe appellant's demeanor during the taped interview and made no finding of intoxication. Therefore, the trial court did not err in allowing the jury to watch appellant's statements for the same aforementioned reasons the findings of fact and conclusions of law were found to be sufficient.

## CONCLUSION

We overrule issues one through three.

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).